NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 14, 2006
Decided May 1, 2007

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| Nos. 05-4278 & 05-4590 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| ALEJANDRO DURAN, MARIA C. DURAN, JAQUELIN DURAN, et al., *Plaintiffs-Appellees*, | No. 01 C 6858 |
| *v.* | **John F. Grady**, *Judge*. |
| RUDY SIRGEDAS, ANTHONY LEWANDOWSKI, THOMAS KRATOCHVIL, et al., *Defendants-Appellants*. | |

**O R D E R**

Nearly eighty plaintiffs sued the Town of Cicero and seventeen Town of Cicero police officers for alleged injuries arising out of a September 2, 2000, incident between the police and the plaintiffs. The district court granted summary judgment in favor of several defendants, but denied other defendants' motions for summary judgment. Some of the defendants who were denied summary judgment bring this interlocutory appeal arguing that the district court impermissibly considered affidavits filed by the plaintiffs and that they were entitled to qualified immunity.

We lack jurisdiction to consider the evidentiary challenges, and affirm in part and reverse in part on the claims of qualified immunity.

I.

On September 2, 2000, Alejandro and Maria Concepcion Duran hosted a party to celebrate their daughter's baptism. Guests began arriving in the late afternoon, and by about 8:00 p.m., there were as many as seventy people at the party. The Durans provided their guests with food and beverages, including beer and wine, and some of the guests brought their own beer as well. Around 9:30 p.m., the Cicero Police Department received a telephone call complaining about the party. Officers Waldemar Cruz and Robert DeCianni responded to the complaint. After asking that cars be moved from the alley by the Durans' home and the music turned down, the officers left. A little later, the Cicero Police Department received a second telephone complaint about the party. Officer DeCianni responded to the call from the police dispatcher, returning to the Durans' home.[1] When Officer DeCianni

---

[1] On appeal, the plaintiffs claim that Officer DeCianni returned to the Durans' party on his own initiative and had not been dispatched. Before the district court, however, the plaintiffs did not respond to the defendants' Statement of Material Facts. The district court therefore treated "those facts asserted in defendants' statement of material facts that have been properly supported with evidence [as] deemed admitted." District Court Opinion at 12. Among other facts, the district court concluded, based on the Statement of Material Facts, that "the Town received a second telephone call from a neighbor of the Durans complaining about the party" and that Officer "DeCianni responded to the call from the police radio dispatcher by returning to the Durans' home." Given the plaintiffs' failure to respond, the plaintiffs cannot now challenge those facts. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997). Accordingly, this opinion relies on the facts set forth by the district court, irrespective of the plaintiffs' challenges to those facts. Because the district court did not consider facts the plaintiffs now attempt to insert on appeal, we too will not consider those facts. *Id.*

For their part, the defendants claim that notwithstanding the plaintiffs' failure to respond to their Statement of Material Facts, the district court "borrowed some facts plaintiffs had raised earlier, which . . . was unfair . . . ." Appellants' Reply Brief at 2. The defendants then assert that this court should consider only those facts contained in their Statement of Material Facts, and not any additional facts set forth by the district court. However, on interlocutory appeal, this court

(continued...)

arrived the second time, there were about eighty or ninety people at the party. "[P]eople in the front yard began arguing with" Officer Decianni. District Court Opinion at 3. "Alejandro Duran argued that the music was not too loud and stated that he had a right to have guests at his house." District Court Opinion at 3. Officer DeCianni radioed the dispatcher and requested assistance from additional officers, stating that the homeowner was being uncooperative.

Officer Michael McMahon arrived as back-up and he also became involved in arguments with the partygoers. Officer DeCianni again radioed the dispatcher, asking for the department to send a supervisor and other officers because people were "getting unruly." District Court Opinion at 3. Several other officers arrived and more verbal confrontations occurred between the officers and party guests. The district court noted that "[t]here [was] no dispute that there was shouting and use of profanities by both the officers and the party guests; however, it is disputed whether the officers or the party guests were the aggressors." District Court Opinion at 3 - 4.

As the situation escalated, the officers called for more and more reinforcements. The entire on-duty City of Cicero Police Department was dispatched to the disturbance. Dispatch also requested back-up support from the City of Chicago and another nearby city. The officers on the scene directed the party guests into the house, and some of the officers sprayed various partygoers with pepper spray. After additional officers arrived and police obtained control of the situation, the officers arrested seven of the plaintiffs: Alejandro Duran, Armando Duran, Adolfo Duran, Gonzalo Duran, Joel Uribe, Heriberto Uribe, and Juan Carlos Uribe.

Juan Carlos Uribe was later released, apparently without being charged, while a misdemeanor complaint was signed against Heriberto Uribe and Joel Uribe for obstructing a peace officer, although those charges were not prosecuted. However, the four Durans were prosecuted on charges of battery and obstructing or resisting a peace officer. Following a jury trial, the Durans were found not guilty.

The Durans, along with approximately seventy other plaintiffs, filed suit against seventeen Town of Cicero police officers and the Town of Cicero, alleging

---

(...continued)
lacks jurisdiction to second-guess the district court's assessment of the record. *See Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). Therefore, the facts set forth in this opinion come from the district court's reading of the record.

numerous constitutional claims.  The defendants filed several motions for summary judgment. The district court granted summary judgment in favor of several of the defendants, but denied other defendants' motions for summary judgment. Some of the defendants whose motions for summary judgment were denied filed this interlocutory appeal, claiming they are entitled to qualified immunity. Additional details relevant to the individual claims against the appealing defendants follow.

II.

As noted, some of the defendants who were denied qualified immunity filed this interlocutory appeal.[2]  While generally this court lacks jurisdiction under 28 U.S.C. § 1291 to review a district court's denial of summary judgment, "an exception to this rule comes into play when a movant requests summary judgment based on qualified immunity." *Jones v. Wilhelm*, 425 F.3d 455, 466 (7th Cir. 2005).  "Under the collateral order doctrine the district court's denial of [a] motion for summary judgment based on qualified immunity is an immediately appealable 'final decision' within the meaning of 28 U.S.C. § 1291 to the extent that it turns on legal rather than factual questions." *Wernsing v. Thompson*, 423 F.3d 732, 741 (7th Cir. 2005).  However, a defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319-20.

In this appeal, the defendants seek to challenge both legal and factual conclusions reached by the district court.  We lack jurisdiction to review the latter challenges interlocutorily, but may consider legal challenges to the district court's denial of qualified immunity.  *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005).  For each claim appealed, because of the important distinction between legal challenges and challenges to the district court's factual conclusions for purposes of this court's jurisdiction, we elaborate in detail on the type of challenge presented by the defendants.

A.     *Claims by individuals pepper sprayed inside the Duran house against Officers DeCianni and Peslak.*

---

[2]  The defendants' Notice of Appeal was filed on behalf of all but one of the defendants, and against all of the plaintiffs.  However, in their opening brief, the defendants state that "[o]n reflection, they have limited the claims as specified in the particular arguments."  Appellant Brief at 3.  Accordingly, this opinion discusses only the specific claims challenged in this interlocutory appeal.

The first issue on appeal involves identical claims brought by thirty-four plaintiffs who claim that while they were inside the Duran house, Officers Robert DeCianni and William Peslak sprayed pepper spray inside the house, causing them to suffer ill effects in violation of their Fourth Amendment rights.[3] Before analyzing the legal issues at play, we initially summarize the factual conclusions the district court found the record could reasonably support.

In denying Officers DeCianni and Peslak qualified immunity on these claims, the district court determined that the pretrial record supported the conclusion that some of these thirty-four plaintiffs "were ordered or forced inside the house," and "that everyone who was inside the house was instructed to stay in the house." The district court also concluded that the pretrial record set forth a genuine issue of fact about whether Officers DeCianni and Peslak sprayed pepper spray into the back door of the Duran house. Additionally, the district court noted that "[a] reasonable jury could conclude from the evidence that the spraying was for the purpose of keeping the plaintiffs at bay inside the house." Alternatively, the district court stated that "[a]nother conclusion could be that it was a deliberate action intended to cause harm; . . . ." Further, the district court found that "the facts could support a finding that defendants used plainly excessive force by assaulting plaintiffs with pepper spray without justification (when those plaintiffs were confined in the house and not provoking the officers)." These were the district court's conclusions as to the facts the record could reasonably support and as to what genuine issues of fact existed. Under *Johnson*, this court lacks jurisdiction to review those conclusions on interlocutory appeal. *Johnson*, 515 U.S. at 319-20.

Nonetheless, on appeal, Officer Peslak seeks to challenge the district court's ruling that the record supported the conclusion that he sprayed pepper spray inside the house. Specifically, Officer Peslak claims that the district court improperly relied on an affidavit filed by Maria Alicia Moreno. In her affidavit, Moreno attested to seeing Officer Peslak "open the door that enters on the kitchen and spray mace into the kitchen."[4] District Court Opinion at 18. Officer Peslak claims

---

[3] Technically, of course, this is a Fourteenth Amendment claim, as the Fourth Amendment "was incorporated against the states by the Fourteenth Amendment's Due Process Clause." *Contreras v. City of Chicago*, 119 F.3d 1286, 1290 (7th Cir. 1997). For simplicity, though, we refer to the defendants' claims alleging unreasonable seizures as Fourth Amendment claims.

[4] Another plaintiff testified to seeing Officer DeCianni spray pepper spray in

(continued...)

that the district court should have stricken this affidavit because it contradicted the previous testimony Moreno gave in her deposition. Officer Peslak maintains that under *Johnson*, 515 U.S. at 319-20, this court has jurisdiction to analyze an affidavit to determine if it was properly considered by the district court.

In *McKinney v. Duplain*, 463 F.3d 679 (7th Cir. 2006), this court rejected a similar attempt to side-step the mandate of *Johnson*. In *McKinney*, the estate of Michael McKinney sued Officer Duplain, alleging Officer Duplain violated McKinney's constitutional rights by using excessive force. In responding to a 911 burglary-in-progress call, Officer Duplain had shot and killed McKinney. *Id.* at 681-82. Officer Duplain argued that he was entitled to summary judgment because the undisputed facts established that McKinney had charged him and that therefore he was justified in shooting McKinney. *Id.* at 684. The district court rejected Officer Duplain's argument, concluding that the testimony presented by McKinney's experts created a factual issue as to whether McKinney had charged Officer Duplain. *Id.* at 689. On appeal, this court noted that there were several problems with the proffered expert opinions, but held that under *Johnson*, this court lacked jurisdiction to consider a *Daubert* challenge. *Id.* at 691-92. Specifically, we explained that

> given the mandate of *Johnson,* we lack jurisdiction to conduct such a review of the record. As *Johnson* made clear, a defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."

*Id.* at 690 (quoting *Johnson,* 515 U.S. at 319-20). We then explained that that was exactly what Officer Duplain sought to do: "Officer Duplain maintains that the record does not support the district court's conclusion that a genuine issue of fact exists as to whether McKinney charged Officer Duplain, because the only evidence that supports the view that McKinney did not charge comes from the inadmissible opinions of the proffered experts. . . ." *McKinney*, 463 F.3d at 690. Accordingly, in *McKinney,* we held that "notwithstanding the numerous problems with the proffered experts' opinions that Officer Duplain identifies, we must dismiss Officer Duplain's appeal for lack of jurisdiction." *Id.* at 691. Similarly, under *Johnson*, we lack jurisdiction in this case to review the challenge to Moreno's affidavit, as such a challenge is, in essence, an attack on the district court's conclusion as to whether or

---

[4](...continued)
the house. Thus, only Officer Peslak challenges the district court's reliance on Moreno's affidavit.

not the pretrial record sets forth a "genuine" issue of fact for trial. *Johnson*, 515 U.S. at 319-20.

Although this court lacks jurisdiction under *Johnson* to assess the district court's review of the factual record, Officers DeCianni and Peslak also present a legal challenge to the district court's decision, namely they challenge the district court's legal conclusion that the facts, as found to exist by the district court, violate clearly established constitutional norms. We have jurisdiction to review this purely legal question. *See Leaf*, 400 F.3d at 1078. *See also Via v. LaGrand*, 469 F.3d 618, 623 n.2 (7th Cir. 2006) ("[I]f the defendant argues on appeal that he is entitled to qualified immunity no matter how the genuine issue of material fact is resolved, we would have jurisdiction to consider that purely legal question.")

First, Officers DeCianni and Peslak challenge the district court's legal conclusion that the thirty-four plaintiffs located in the Duran house were "seized" for purposes of the Fourth Amendment, claiming instead that the plaintiffs' claims fall under the Fourteenth Amendment's "shock the conscience" standard. A seizure for purposes of the Fourth Amendment can occur when an officer "by means of physical force or show of authority has in some way restrained the liberty of a citizen." *United States v. Mendenhall*, 446 U.S. 544, 552 (1980) (internal quote omitted). *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.") (internal quotation omitted). A person is "seized" under the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554. The *Mendenhall* court further explained the circumstances that might indicate a seizure:

> [E]ven where the person did not attempt to leave, . . . [for instance] the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* at 554.

Based on the facts, as found to exist by the district court, we agree that a reasonable jury could conclude that the thirty-four plaintiffs were "seized" for purposes of the Fourth Amendment. As the district court explained, when the officers arrived they told several of the plaintiffs to "get inside the house" and "get

the f[–] inside." District Court Opinion at 23. Additionally, "[a]t the time, there were numerous police officers in the yard, outside the yard, alongside the house, and entering and exiting the house." District Court Opinion at 23. Moreover, the district court concluded that "[a] reasonable jury could conclude from the evidence that the spraying was for the purpose of keeping the plaintiffs at bay inside the house." District Court Opinion at 26. Based on this view of the facts, a jury could reasonably conclude that the individuals inside the house were seized.

Officers DeCianni and Peslak respond that some of the plaintiffs were already inside the house and may not have wanted to leave. However, the district court concluded that "there is evidence that everyone who was inside the house was instructed to stay in the house, . . . [and] [t]he plaintiffs who had already been in the house likely could hear what was going on outside and could see what was happening with the plaintiffs who were ordered inside." District Court Opinion at 24-25. We agree with the district court in its conclusion that based on this view of the facts "a reasonable person in the plaintiff's shoes would not have believed that he or she was free to leave the house." District Court Opinion at 25.

Officers DeCianni and Peslak counter that "trying to get partygoers to go inside the Duran house, their own houses, or across the street and away from the scene was a sensible safety precaution in the midst of a riot, not a seizure. Police were trying to control the crowds so they would not be running back and forth, getting involved, getting hurt." Appellant Brief at 20. We agree that it was eminently reasonable for the officers, when confronted with an escalating encounter with some seventy to ninety individuals, to try to disperse and control the crowd by ordering partygoers inside. However, that merely goes to the reasonableness of the seizure, not the initial question of whether Officers DeCianni and Peslak seized the thirty-four plaintiffs ordered to stay in the Duran house. Had the plaintiffs' only claim been that the officers violated their Fourth Amendment rights by restraining them inside the Duran house, under the facts of this case, as set forth by the district court, there would be no constitutional violation.

The facts, though, as found to exist by the district court, went further: The district court concluded that the "facts could support a finding that defendants used plainly excessive force by assaulting plaintiffs with pepper spray without justification (when those plaintiffs were confined in the house and not provoking the officers)." Thus, the reasonableness of directing and holding partygoers inside the house is not the issue; rather, the issue is whether, in seizing the plaintiffs inside the house, Officers DeCianni and Peslak used excessive force by spraying pepper spray into the house.

Use of excessive force by police officers during a seizure constitutes a Fourth Amendment violation that is actionable under § 1983. *Clash v. Beatty,* 77 F.3d 1045, 1047 (7th Cir. 1996) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989)). More specifically, as the Supreme Court explained in *Graham*, if "as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures.'" *Graham,* 490 U.S. at 394. In such a circumstance, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. *Graham,* 490 U.S. at 396-97.

The officers respond that even if the plaintiffs were seized for purposes of the Fourth Amendment, they are still entitled to qualified immunity on the excessive force claim. "To evaluate a claim of qualified immunity, we engage in a two-step analysis. First, we determine whether the plaintiffs' claim states a violation of their constitutional rights. Then, we determine whether those rights were clearly established at the time the violation occurred." *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). Unless the plaintiffs prove both prongs, the defendants are entitled to qualified immunity. *Id.*

In arguing that they are entitled to qualified immunity, the officers maintain that the plaintiffs failed to establish a constitutional violation because none of the plaintiffs claimed to be a target of the pepper spray. However, contrary to the officers' argument, the thirty-four plaintiffs claim that they were all targets of the pepper spray. In any event, if a police officer intends to inflict injury, without justification, the fact that the officer intentionally targets a large group of individuals, as opposed to a specific individual, is irrelevant.[5] Of course, that might not be what happened here, as under one reading of the facts, the officers only intended to spray individuals who were attempting to leave the house after the officers ordered them indoors. *See* District Court Opinion at 26 ("A reasonable jury

---

[5] This case differs from the situation where an innocent bystander is unintentionally injured as a result of an officer's alleged excessive force. *See Bublitz v. Cottey*, 327 F.3d 485, 489 (7th Cir. 2003) (rejecting a transferred intent theory to liability under § 1983 and holding that because the plaintiffs were "simply not the intended object of the defendant officers' attempts to seize the fleeing [suspect] . . . the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim"). Here, instead, all of the individuals in the house claim they were targeted.

could conclude from the evidence that the spraying was for the purpose of keeping the plaintiffs at bay inside the house."). Given the need for the police to control the increasingly dangerous situation, a reasonable officer could believe it reasonable to use pepper spray to detain inside the house individuals refusing to obey a lawful order. Thus, if it were undisputed that Officers DeCianni and Peslak had sprayed only the individuals attempting to exit the house after they were directed to remain inside, these officers would be entitled to qualified immunity, even if the spray caused discomfort to others.[6] *See Bublitz,* 327 F.3d at 489-91; *cf. Clement v. Gomez,* 298 F.3d 898, 903-04 (9th Cir. 2002) (holding that officers who sprayed pepper spray into a cell to stop a fight between two inmates did not violate the Eighth Amendment rights of other inmates who were allegedly injured by the pepper spray).

As noted above, however, in this case, the district court concluded that the "facts could support a finding that defendants used plainly excessive force by assaulting plaintiffs with pepper spray without justification (when those plaintiffs were confined in the house and not provoking the officers)." District Court Opinion at 28. Assaulting citizens who are safely detained without any provocation violates clearly established constitutional principles. *See Clash*, 77 F.3d at 1048 (stating that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever"); *see also Payne v. Pauley,* 337 F.3d 767, 780 (7th Cir. 2003) (holding that in 1998, it was clearly established that "it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes").

Alternatively, Officers DeCianni and Peslak argue that they are entitled to qualified immunity because none of the plaintiffs "claim to have been by the rear door when either of these officers allegedly sprayed." Whether the plaintiffs were near the rear door, however, is irrelevant if the officers acted unreasonably in spraying the pepper spray at the individuals inside the house and the plaintiffs were injured by the pepper spray. It may well be that many of the plaintiffs did not

---

[6] The district court also noted that several of the defendants who were inside the house testified that pepper spray was sprayed under the back door. District Court Opinion at 24. However, the district court did not find that the record evidence supported the conclusion that Officers DeCianni and Peslak were the ones who sprayed the pepper spray under the closed door. Therefore, for purposes of the claims against Officers DeCianni and Peslak, that testimony is irrelevant.

suffer ill effects from the pepper spray, given that pepper spray may have a limited dispersal range. However, we lack jurisdiction to review the record to determine whether the thirty-four plaintiffs presented evidence that they were injured by the pepper spray being discharged within the house because the district court concluded that the evidence could support a finding that those plaintiffs were assaulted with pepper spray. *See Johnson*, 515 U.S. at 319-20.

In conclusion, under the district court's reading of the factual record, Officers DeCianni and Peslak are not entitled to qualified immunity. Therefore, at this stage, we must affirm the district court's denial of summary judgment to defendants DeCianni and Peslak on the claims brought by the thirty-four plaintiffs for injuries allegedly caused by Officers DeCianni and Peslak spraying pepper spray into the house.

Before considering the other issues on appeal, we pause to highlight that the principles set forth above apply equally to the remaining claims. Specifically, under *Johnson*, we lack jurisdiction to review the record to determine whether the genuine issues of fact found to exist by the district court in fact exist. We also lack jurisdiction to consider the defendants' challenges to the district court's evidentiary rulings and consideration of later-filed affidavits. Rather, we may only consider the legal question of whether the facts, as found to exist by the district court, could violate clearly established constitutional norms. Because numerous plaintiffs present distinct claims against multiple defendants, implicating different factual findings by the district court, we discuss the claims, for the most part, individually, even though the same law governs. While this results in some redundancy, given the complexity of this case, for clarity purposes, we prefer to err on the side of repetitiveness.

## B. Arrest of Gonzalo Duran

Next, we consider Gonzalo Duran's claims arising from his arrest. First, Gonzalo alleged false arrest claims against Sergeant Krummick and Officers Vitalo, Peslak and DeCianni. Second, Gonzalo claims that Sergeant Krummick and Officers Sirgedas, Vitalo, Peslak and DeCianni used excessive force in arresting him. The defendants respond that they had probable cause to arrest Gonzalo and that they only used as much force as necessary to effectuate the arrest, and accordingly were entitled to qualified immunity. We consider the false arrest and excessive force claims in turn.

### 1. False Arrest

Gonzalo sued defendants Krummick, Vitalo, Peslak, and DeCianni for false arrest under § 1983. To establish a constitutional claim for false arrest under § 1983, Gonzalo must prove that the defendants arrested him without probable cause. *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001). However, even if the defendants arrested Gonzalo without probable cause, "[i]f the officers can establish that they had 'arguable probable cause' to arrest the plaintiff, then the officers are entitled to qualified immunity. . . ." *Id.* In other words, a defendant is entitled to qualified immunity on a false arrest claim if "a reasonable police officer in the same circumstances and with the same knowledge . . . as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (emphasis in original) (internal citations omitted).

### a. Sergeant Krummick

In summarizing the facts relating to Sergeant Krummick, the district court stated that Sergeant Krummick claimed that he "was told that Gonzalo Duran had thrown a bottle or can at [DeCianni] and that [DeCianni] wanted him arrested." District Court Opinion at 70. The district court also stated that "Gonzalo denies that he threw a bottle or can at DeCianni. He also denies that DeCianni ever claimed at the time that he was struck by a bottle or can; rather, he states that DeCianni merely told Krummick that the music was too loud." District Court Opinion at 70. The district court then concluded that "there are factual issues involved in the reasonableness determination on the false arrest claim," and that therefore "Krummick's motion for summary judgment is denied as to Gonzalo Duran's false arrest claim. . . ." District Court Opinion at 71.

As explained above, this court lacks jurisdiction to review the record to determine whether the district court's view of the facts is adequately supported by the record evidence. *See supra* at 4. However, this court has jurisdiction to address the legal question of whether the facts, as set forth by the district court, violate clearly established constitutional norms. *See supra* at 6. In this case, as the district court explained, there are some factual disputes, namely whether Gonzalo threw a bottle or can at Officer DeCianni and whether Officer DeCianni told Sergeant Krummick that Gonzalo had thrown a bottle or can at him, or merely told him the music was too loud. These factual disputes are immaterial, though, because Gonzalo (at least based on the facts set forth by the district court) did not challenge Sergeant Krummick's claim that Officer DeCianni told him that he wanted Gonzalo arrested. An officer may reasonably rely on information provided by other officers. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). Thus, "[t]he police who actually make the arrest need not personally know all the facts

that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (quoting *Tangwall v. Stuckey,* 135 F.3d 510, 517 (7th Cir.1998). Under those circumstances, an "arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." *Parra*, 402 F.3d at 764 (quoting *Tangwall*, 135 F.3d at 517. In this case there are factual disputes that prevent us from determining whether probable cause supported Officer DeCianni's directive to arrest Gonzalo. Nevertheless, "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997). Under the circumstances of this case, we conclude that it was objectively reasonable for Sergeant Krummick to rely on Officer DeCianni's statement as a basis for believing probable cause existed to arrest Gonzalo. In other circumstances it might be appropriate for an officer to first obtain additional information regarding the basis for the arrest. But here Sergeant Krummick had no time to reflect. He was part of a group of reinforcing officers who had just been dispatched to the already chaotic scene. The officers were still mostly outnumbered by the partygoers, and the situation was apparently escalating. Under these circumstances, Sergeant Krummick could reasonably rely on Officer DeCianni's statement that he wanted Gonzalo arrested as a basis for that arrest. Accordingly, Sergeant Krummick was entitled to qualified immunity. Therefore, we reverse the district court's denial of summary judgment to Sergeant Krummick on the false arrest claim brought by Gonzalo.

### b. *Officer Vitalo*

As to Gonzalo's false arrest claim against Officer Vitalo, the district court noted that Officer Vitalo claimed that "[t]he evidence is unrebutted that he was told that Gonzalo Duran threw a can or bottle that hit Officer DeCianni." However, the district court found that an issue of fact existed because Gonzalo denies that Officer "DeCianni ever claimed at the time that he was struck by a bottle or can; rather he states that DeCianni merely told Krummick that the music was too loud." District Court Opinion at 76 - 77. In its summary of the facts, though, the district court also noted that Officer Sirgedas stated that after he "arrived at the Durans' home, he heard Officer DeCianni tell Officer Vitalo that Gonzalo Duran had to be arrested." District Court Opinion at 37. As with the case of Sergeant Krummick, even if Officer DeCianni had not told Officer Vitalo that Gonzalo had thrown an object at him, under the limited circumstances of this case, Officer Vitalo could reasonably

rely on Officer DeCianni's statement that he wanted Gonzalo arrested, as a basis to arrest Gonzalo. Officer Vitalo did not have the luxury of time to obtain a full briefing on the details; he had to act on what he knew at the time, and that included dispatch calls for back-up because of problems with the homeowners. Under those circumstances, a reasonable officer could believe there was probable cause to arrest Gonzalo and, accordingly, Officer Vitalo was entitled to qualified immunity. Therefore, we reverse the district court's denial of summary judgment to defendant Officer Vitalo on Gonzalo's false arrest claim.

### c. Officer Peslak

Officer Peslak similarly argued to the district court that he was entitled to qualified immunity because "his involvement in the arrest was simply to help fellow officers of whom he had no reason to suspect they [sic] were not entitled to arrest someone." District Court Opinion at 87 (quoting Peslak's memorandum at 11). The district court rejected this argument concluding that "Peslak points to no particular evidence in support of his argument." District Court Opinion at 87. From this statement, it appears that the district court rejected Officer Peslak's motion based on his failure to properly cite to the record. A district court may deny a motion for summary judgment because the movant did not provide record support for his motion. However, in this case it would be a waste of judicial resources to allow Gonzalo's claim against Officer Peslak to proceed because the facts, as set forth by the district court in other portions of its opinion, support Officer Peslak's claim of qualified immunity. Specifically, the facts as summarized by the district court showed that Officer Peslak was not present at the scene when the initial dispute between Officer DeCianni and the partygoers broke out, but rather that Officer Peslak arrived in response to a call for back-up support. By the time Officer Peslak arrived there were some eighty or ninety people at the party, and there were several verbal confrontations occurring between the officers and partygoers. Additionally, the district court noted that the record showed that Officer DeCianni told at least two other officers that he wanted Gonzalo arrested. Even if Officer DeCianni did not direct Officer Peslak to arrest Gonzalo, a reasonable officer witnessing the scene and seeing other officers move to arrest Gonzalo could believe that those officers were acting on probable cause, and assist in effectuating the arrest. Although the other officers may not have expressly told Officer Peslak that probable cause existed, their conduct implied as much. Under those circumstances, a reasonable officer could believe there was probable cause to arrest Gonzalo, and accordingly Officer Peslak was entitled to qualified immunity. *Cf. Rogers*, 120 F.3d at 455. Therefore, we reverse the district court's denial of summary judgment to Officer Peslak on Gonzalo's false arrest claim.

### d. Officer DeCianni

Officer DeCianni also claims that he is entitled to qualified immunity on Gonzalo's false arrest claim. Because Gonzalo claims he did not throw a beer can or bottle at Officer DeCianni, as Officer DeCianni claimed, a factual dispute exists as to whether Officer DeCianni had probable cause for arresting Gonzalo on that basis. Officer DeCianni, however, argues that he is nonetheless entitled to qualified immunity because he "could have legally arrested Gonzalo for failing to shut down the party (which was Gonzalo's understanding as to why he was being arrested) and causing a disturbance; he could also have arrested him for resisting a lawful police order." Appellant Brief at 31.

"Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). In his brief on appeal, Officer DeCianni did not cite to the relevant Illinois statutory provisions that he claims justified his arrest of Gonzalo. Officer DeCianni also did not identify the state law requirements necessary to justify Gonzalo's arrest on the proposed alternative grounds. Officer DeCianni's failure to develop this argument constitutes a forfeiture of those arguments on appeal. *J. S. Sweet Co., Inc., v. Sika Chem. Corp.*, 400 F.3d 1028, 1035 n.2 (7th Cir. 2005). Accordingly, we affirm the district court's denial of summary judgment to Officer DeCianni on Gonzalo's false arrest claim.

### 2. Excessive Force

Gonzalo also claims that Sergeant Krummick and Officers Sirgedas, Vitalo, Peslak, and DeCianni used excessive force in arresting him. As the Supreme Court held in *Graham*, 490 U.S. at 396, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," but the Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Id.* at 396. "In order to decide whether the amount of force used during a seizure is 'excessive,' we examine the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Specifically, we consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Additionally, we "consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties." *Id.* In the final analysis, the excessive force inquiry

"looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *Id.* (internal quotation omitted).

To determine whether Sergeant Krummick and Officers Sirgedas, Vitalo, Peslak and DeCianni used excessive force, we must first summarize the factual conclusions the district court found the record could reasonably support. In denying the defendants qualified immunity on Gonzalo's claim of excessive force, the district court summarized the record evidence, noting that Officer Sirgedas stated that after he "arrived at the Durans' home, he heard Officer DeCianni tell Officer Vitalo that Gonzalo Duran had to be arrested." The district court stated that it was difficult to tell exactly what Officer Sirgedas saw or did next, but that when Officer Vitalo "attempted to place Gonzalo Duran into custody," Gonzalo "got on top of Officer Vitalo and started kicking him, punching him." District Court Opinion at 38. Officer Sirgedas then tried to help Officer Vitalo by hitting Gonzalo's leg once with his asp (i.e., baton) and by punching Gonzalo once in the head with a closed fist before handcuffing Gonzalo.

The district court also summarized Gonzalo's version of the events, first noting that "at his criminal trial, Gonzalo admitted that he was aware that certain officers wanted to arrest him and that he 'walked fast' into the back yard [sic] to get away from them." District Court Opinion at 38. Gonzalo also "admitted that he struggled with two officers (apparently Vitalo and DeCianni), but he denies that he bit Vitalo and denies that he hit or kicked Vitalo." District Court Opinion at 38. Gonzalo, however, admits that he bit DeCianni but claims he did so because DeCianni was choking him and he could not breathe. District Court Opinion at 38. The district court also stated that "Gonzalo does not admit that he resisted arrest to the extent described by the officers involved . . . ." District Court Opinion at 39. As explained at length above, at the interlocutory appeal stage, we must accept the facts as found to exist by the district court. *See Johnson*, 515 U.S. 319-20; *see supra* at 4.

Against this factual backdrop, then, we consider the legal question of whether the defendants sued by Gonzalo for excessive force are entitled to qualified immunity. As noted above, a defendant is entitled to qualified immunity "even if we conclude that the defendant's alleged actions were improper to the point of being unconstitutional, . . . unless the unconstitutionality of the actions was clearly established at the time of their occurrence." *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005).

   *a. Defendant Officer Sirgedas*

As to defendant Officer Sirgedas, the district court concluded that "[t]he nature of Sirgedas' use of force—in particular his admitted punching of Gonzalo in the head with a closed fist—requires a jury determination of reasonableness." District Court Opinion at 40.  However, as this court explained in *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003) "when material facts (or enough of them to justify the conduct objectively) are undisputed, then there would be nothing for a jury to do *except* second-guess the officers, which *Graham* held must be prevented." (emphasis in original).  In this case, although there are many factual disputes, none are material to the question of whether Officer Sirgedas violated Gonzalo's Fourth Amendment rights when he struck him with an asp and once in the head.  This is a question of reasonableness of force, which is a legal issue, *id.,* and it is reviewable on interlocutory appeal.  *See supra* at 4.

Based on the facts as set forth by the district court, we conclude that Officer Sirgedas did not use excessive force when he struck Gonzalo in the leg with an asp and once in the head with a closed first.  Specifically, as the district court laid out, Gonzalo fled to the backyard to avoid arrest and resisted arrest.  Gonzalo also admitted to struggling with two officers, showing the difficulty they had in subduing him.  And while Gonzalo claimed he did not resist arrest to the extent the officers claimed, he admitted resisting arrest by, among other things, biting an officer.  We add to those facts the explosive nature of the scene and the need to quickly subdue Gonzalo before he injured the officers or attracted other party guests to join in the struggle.  Under the totality of the circumstances, we conclude that Officer Sirgedas acted reasonably in striking Gonzalo on the leg with an asp and once in the head with his fist.[7]  Accordingly, we reverse the district court's denial of summary judgment to defendant Sirgedas on the excessive force claim brought by Gonzalo.

---

[7] Given the unique circumstances of this case, there is a vacuum of analogous case law.  Nonetheless, the factors set forth in *Graham* support our conclusion. *See Graham*, 490 U.S. at 396 (holding that whether the force used is reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").  Alternatively, given the lack of analogous case law, even were we to conclude that Officer Sirgedas used excessive force, he would be entitled to qualified immunity on Gonzalo's claims because it was not clearly established that his conduct was unreasonable.

### b. *Defendant Officer Vitalo*

Gonzalo also alleged an excessive force claim against Officer Vitalo. The district court set forth the facts related to Gonzalo's claim against Officer Vitalo in short order, noting only that: "As for Gonzalo Duran; Vitalo admits that he tackled Gonzalo and, evidently, that he hit Gonzalo with his fists and with an asp when attempting to subdue and arrest him." District Court Opinion at 72. Based on these facts, the district court denied Officer Vitalo's motion for summary judgment based on qualified immunity. Again, the question of reasonableness of force is a legal issue, *Bell*, 321 F.3d at 640, and it is reviewable on interlocutory appeal. *See supra* at 4.

As was the case with Officer Sirgedas, Officer Vitalo did not use excessive force when he struck Gonzalo with an asp and with his fists. Gonzalo admitted to fleeing to the backyard to avoid being arrested and to resisting arrest. Gonzalo also admits that he struggled with at least two officers and that he bit one of those officers. Given Gonzalo's admission to resisting arrest, coupled with the escalating situation, the number of partygoers and the presence of alcohol, we conclude that it was reasonable for Officer Vitalo to strike Gonzalo with an asp and his fists while attempting to subdue and arrest him.[8] Accordingly, Officer Vitalo did not violate Gonzalo's Fourth Amendment's rights. Therefore we reverse the district court's denial of summary judgment to defendant Vitalo on Gonzalo's excessive force claim.

### c. *Defendant Sergeant Krummick*

Gonzalo also sued Sergeant Krummick for excessive force. The district court summarized the facts as related to this claim as follows: "There is evidence from several plaintiffs that after officers pursued Gonzalo as he 'walked fast' from the front yard to the back yard, Krummick participated in the scuffle and arrested of Gonzalo (described in part in our discussion of Officer Sirgedas's motion) by hitting Gonzalo with an asp and kicking him." District Court Opinion at 69-70. The district court's earlier description of the arrest noted that Gonzalo "admitted that he struggled with two officers (apparently Vitalo and DeCianni), but he denies that he

---

[8] Again, the uniqueness of this case leaves us without any analogous case law, but the *Graham* factors nonetheless support our conclusion that Officer Vitalo did not use excessive force in arresting Gonzalo. Alternatively, given the lack of analogous case law, even were we to conclude that Officer Vitalo used excessive force, he would be entitled to qualified immunity on Gonzalo's claims because it was not clearly established that his conduct was unreasonable.

bit Vitalo and denies that he hit or kicked Vitalo." District Court Opinion at 38. The district court also noted that Gonzalo admitted that he bit DeCianni. District Court Opinion at 38.

As was the case with Officers Sirgedas and Vitalo, under the circumstances facing the officers, striking Gonzalo with an asp and kicking him did not constitute excessive force. Specifically, as noted above, Gonzalo admitted to fleeing to the backyard to avoid being arrested and to resisting arrest and he admits that he struggled with at least two officers and that he bit one of those officers. Gonzalo's admission to resisting arrest and the setting in which the resistance occurred (an escalating situation in which partygoers outnumbered officers), we conclude it was reasonable for Sergeant Krummick to strike Gonzalo with an asp and kick him so as to try to subdue and arrest him.[9] Accordingly, we reverse the district court's denial of summary judgment to defendant Sergeant Krummick on Gonzalo's excessive force claim.

### d. Defendant Officer Peslak

As for the excessive force claim against Officer Peslak, the district court stated that "Gonzalo Duran alleges that Peslak hit and kicked him in the attempt to subdue and arrest him." District Court Opinion at 83. The district court denied Officer Peslak summary judgment concluding that a reasonable jury could find that "Peslak either intended to cause [Gonzalo] harm or was deliberately indifferent to the risk of causing [him] harm." District Court Opinion at 85. While on interlocutory appeal from the denial of qualified immunity we must accept the district court's version of the factual record, we review de novo legal conclusions. *See Leaf*, 400 F.3d at 1077-78. And the question of reasonableness of force is a legal issue. *See Bell*, 321 F.3d at 640.

In this case, as with Officers Sirgedas and Vitalo and Sergeant Krummick, under the circumstances confronting the officers, it was reasonable for Officer Peslak to hit and kick Gonzalo so as to effectuate the arrest.[10] Therefore, Officer

---

[9] As noted in our analysis of the claims against Officers Sirgedas and Vitalo, the unique facts of this case leave us without analogous case law, but the *Graham* factors support our conclusion. Alternatively, the lack of analogous case law would entitle Sergeant Krummick to qualified immunity.

[10] Again, the *Graham* factors support this conclusion, and the lack of

(continued...)

Peslak did not violate Gonzalo's Fourth Amendment rights and we reverse the district court's denial of summary judgment to Officer Peslak on Gonzalo's excessive force claim.

### e.    Defendant Officer DeCianni

Gonzalo also alleged an excessive force claim against Officer DeCianni. As to this claim, the district court noted that "Gonzalo alleged that DeCianni beat and choked him in the attempt to subdue and arrest him." District Court Opinion at 88. The district court then concluded that Gonzalo Duran had an evidentiary basis for his excessive force claim against Officer DeCianni. On appeal, Officer DeCianni claims that he was entitled to qualified immunity on Gonzalo Duran's excessive force claim. However, in its order denying Officer DeCianni summary judgment, the district court stated that "DeCianni argues that he is entitled to qualified immunity on these [excessive force] claims (except as to the claims of Ruben Pineda and Gonzalo Duran.)" District Court Opinion at 90. From this passage, it appears that Officer DeCianni did not argue qualified immunity on the excessive force claim Gonzalo presented. A claim not raised before the district court is waived on appeal.[11] *See United States v. Hawk*, 434 F.3d 959, 961-62 (7th Cir. 2006). Accordingly, we affirm the district court's denial of qualified immunity to Officer DeCianni on Gonzalo's excessive force claim.

## C.    Other Claims

In addition to the above claims, several individual plaintiffs sued for alleged constitutional violations, and individual defendants sought qualified immunity on

---

[10](...continued)
analogous case law would in any event entitled Officer Peslak qualified immunity.

[11] The defendants acknowledge as much as the claims against another defendant, Officer Lewandowski, noting that because they mistakenly failed to argue qualified immunity, they cannot ask this court to reverse the district court on that basis. *See* Appellant Brief at 37 n.6. The defendants do not acknowledge the same failure with respect to Officer DeCianni; but they also do not challenge the district court's conclusion that Officer DeCianni did not argue that he was entitled to qualified immunity as to the excessive force claim Gonzalo Duran brought. Accordingly, we take as undisputed the district court's statement that Officer DeCianni did not argue that he was entitled to qualified immunity on Gonclaim of excessive force.

those claims. Again, select defendants appeal from the district court's denial of qualified immunity.  We consider each of these individual claims in turn.

> 1.       *Claims by Amada Duran, Concepcion Duran, Jaime Duran, Kevin Duran, and Alondra Paredes against Officers Krummick and/or Officer DeCianni*

Amada Duran, Concepcion Duran, Jaime Duran, and Kevin Duran sued Sergeant Krummick and Officer DeCianni alleging that the defendants violated their constitutional rights by spraying them with pepper spray. In addition, Alondra Paredes sued Officer DeCianni, claiming that he also sprayed her with pepper spray in violation of her constitutional rights. In considering Sergeant Krummick and Officer DeCianni's motion for summary judgment based on qualified immunity, the district court relied on an affidavit Amada Duran filed with the court.  In her affidavit, Amada stated, "I was sprayed in the neck with pepper spray by Thomas Krummick, then by Robert DeCianni," and that "[m]y children, Jaime, Kevin, and Concepcion, and my niece, Alondra Paredes, were with me and holding on to me when I was sprayed and they were sprayed as well and were crying." Based on this affidavit, the district court concluded that the plaintiffs alleged sufficient facts that "shocked the conscience" of the court so as to support a jury finding of a violation of their Fourteenth Amendment due process rights.[12]

On appeal, Sergeant Krummick and Officer DeCianni first argue that the district court erred in considering Amada Duran's affidavit, claiming that Amada's affidavit contracted her prior sworn interrogatory answers.  However, as explained above, *see supra* at 5-6, this court lacks jurisdiction to review the challenge to Amada Duran's affidavit, as such a challenge is, in effect, an attack on the district court's conclusion as to whether or not the pretrial record sets forth a "genuine" issue of fact for trial. *McKinney*, 463 F.3d at 690.

---

[12] Given Amada Duran's affidavit, it is unclear why Alondra Paredes only alleged an excessive force claim against Officer DeCianni.  However, the district court's opinion clearly states that only select plaintiffs asserted excessive force claims against Sergeant Krummick, and then lists those plaintiffs.  Absent from that list is Alondra Paredes. Moreover, in its analysis of Sergeant Krummick's motion for summary judgment, the district court only analyzes Sergeant Krummick's alleged pepper spraying of Amada Duran and her children, and not Alondra Paredes. Conversely, the district court listed Alondra Paredes as one of the plaintiffs suing Officer DeCianni for excessive force based on his alleged pepper spraying of her.

Sergeant Krummick and Officer DeCianni argue alternatively "that even if the affidavit is considered the plaintiffs have not shown a Fourteenth Amendment violation." Appellant Brief at 35. This court has jurisdiction to consider this purely legal question of whether the facts, as set forth by the district court, could be sufficient to establish a violation of clearly established constitutional law. *See Leaf*, 400 F.3d at 1077-78.

Initially, we note that unlike the plaintiffs inside the house, these plaintiffs were not "seized" within the meaning of the Fourth Amendment. Accordingly, their claim is analyzed under the due process clause of the Fourteenth Amendment. Conduct that violates the Fourteenth Amendment's guarantee of substantive due process must be so arbitrary that it "shocks the conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 846-47 (1998). Substantive due process is a most amorphous doctrine that is a "difficult concept to pin down," *Tun v. Whitticker*, 398 F.3d 899, 901 (7th Cir. 2005), but only "conduct intended to injure in some way unjustifiable by any government interest" shocks the conscience. *Lewis*, 523 U.S. at 849.

In this case, the facts as set forth by the district court were that Sergeant Krummick and Officer DeCianni sprayed pepper spray at Amada Duran and her children, and Officer DeCianni also used excessive force by spraying Amada's niece, all while they were standing in the back yard. The district court did not find any evidence that these plaintiffs were refusing to follow a police order or were resisting arrest in any way. Nor did the district court conclude that the record evidence indicated that the officers were spraying pepper spray more broadly to disperse the crowd. Given these limited facts, we agree with the district court that a reasonable officer would know that spraying individuals (who allegedly were not resisting arrest, refusing to obey a lawful order to disperse, or otherwise interfering with official business) with pepper spray without justification could support a jury verdict based on the Fourteenth Amendment's "shocks the conscience" standard, as it could be found to be "conduct intended to injure in some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 840. Accordingly, based on the facts set forth by the district court, we conclude that at this stage Sergeant Krummick and Officer DeCianni were not entitled to qualified immunity on these claims. Therefore, we affirm the district court's denial of summary judgment to defendants Sergeant Krummick and Officer DeCianni on these claims.

> 2.     *Claims by Joel Rico Duran and Jesus Rico Duran against Officers Cruz and DeCianni*

Plaintiffs Joel Rico Duran and his two-year-old son, Jesus Rico Duran, sued Officers Cruz and DeCianni, claiming those officers sprayed them with pepper

spray. Officers Cruz and DeCianni argued before the district court that they were entitled to qualified immunity on these claims. Because Joel Rico Duran and Jesus Rico Duran were not seized at the time the officers allegedly sprayed them with pepper spray, the district court analyzed their claims under the Fourteenth Amendment's "shocks the conscience" standard. Applying this standard, the district court denied Officers Cruz and DeCianni qualified immunity, concluding that "[a] jury could reasonably find on the facts that Cruz's [and DeCianni's] spraying of plaintiffs was done to cause harm." District Court Opinion at 62, 90.

On appeal, Officers Cruz and DeCianni first argue that the district court erred in considering an affidavit Joel Rico Duran filed identifying Officers Cruz and DeCianni as the officers who sprayed him and his son. Officers Cruz and DeCianni claim that this later-filed affidavit contradicted and changed the testimony Joel Rico Duran had provided in his earlier answers to interrogatories. As noted above, we lack jurisdiction to consider this challenge on interlocutory appeal. *See infra* at 5-6.

Alternatively, Officers Cruz and DeCianni claim that Joel Rico Duran and Jesus Rico Duran did not present sufficient evidence to overcome the defendants' claim of qualified immunity. Jurisdiction exists to consider this legal question, but in doing so we must accept the facts as set forth by the district court. *See supra* at 4. The facts as summarized by the district court are that Officers Cruz and DeCianni sprayed Joel Rico Duran and his two-year-old son, Jesus Rico Duran, with pepper spray. Again, there was no finding of fact that Joel Rico Duran was resisting arrest, disobeying a lawful order, or interfering with the police officers' performance of their duties. Given these limited facts, we agree with the district court that a reasonable officer would know that spraying individuals (who were not resisting arrest, refusing to obey a lawful order, or otherwise interfering with official business) with pepper spray and without justification "shocks the conscience" in violation of the Fourteenth Amendment. *See Lewis*, 523 U.S. at 849. Accordingly, based on the facts set forth by the district court, we must conclude at this stage that Officers Cruz and DeCianni are not entitled to qualified immunity on Joel Rico Duran's and Jesus Rico Duran's claims and we affirm the district court's denial of summary judgment.

> 3.    *Claims by Raquel Uribe, Florina Pindea, and Manuel Uribe Palacios against Officer Vitalo*

Plaintiffs Raquel Uribe, Florina Pindea, and Manuel Uribe Palacios sued Officers Lewandowski and Vitalo, alleging that these defendants violated their constitutional rights by spraying them with pepper spray. Officer Vitalo sought

summary judgment based on qualified immunity.[13]  In considering Officers Vitalo's motion for summary judgment based on qualified immunity, the district court relied on an affidavit Rachel Uribe filed, stating that Vitalo entered the house and "sprayed me, my mother, Florina Pineda, my father, Manuel Uribe, Sr., with pepper spray."  District Court Opinion at 42 (quoting Affidavit of Raquel Uribe, Ex. 156).  The district court concluded that Uribe's affidavit created a genuine issue of material fact as to whether Officer Vitalo violated the constitutional rights of Raquel Uribe, Florina Pindea and Manuel Uribe Palacios by spraying them with pepper spray while they were inside the house.  District Court Opinion at 43.

On appeal, Officer Vitalo first argues that the district court erred in considering Raquel Uribe's affidavit, claiming that her affidavit contradicted her prior, sworn interrogatory answers. However, as explained above, *see supra* at 5-6, this court lacks jurisdiction to review the challenge to Raquel Uribe's affidavit, as such a challenge is, in effect, an attack on the district court's conclusion as to whether or not the pretrial record sets forth a "genuine" issue of fact for trial. *McKinney*, 463 F.3d at 690.

Officer Vitalo argues alternatively that even considering the affidavit, he is entitled to qualified immunity because these plaintiffs have not presented sufficient evidence of a constitutional violation. This court has jurisdiction to consider the purely legal question of whether the facts, as set forth by the district court, could be sufficient to establish a violation of clearly established constitutional law. *See supra* 4.  In this case, the facts set forth by the district court were that Officer Vitalo entered the house and sprayed Raquel Uribe and her parents.  The district court did not find any evidence that these plaintiffs were refusing to follow a lawful order, were resisting arrest in any way, or were attempting to leave the house.  Given these limited facts, we agree with the district court that a reasonable officer would know that spraying pepper spray at individuals who were safely detained within a house constitutes excessive force in violation of the Fourth Amendment. *See supra* 9-10; *see also Clash*, 77 F.3d at 1048 ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."). Alternatively, such conduct could also "shock the conscience" in

---

[13] On appeal, the defendants admit that they "failed to argue qualified immunity for Lewandowski . . . [and] [c]onsequently, they can only ask that the judge be reversed with respect to Vitalo."  Appellant Brief at 37 n.6.

violation of the Fourteenth Amendment.  *See, e.g., Lewis*, 523 U.S. at 849.[14] Accordingly, based on the facts as set forth by the district court, we conclude that at this stage of litigation, Officer Vitalo is not entitled to qualified immunity and we affirm the district court's denial of his motion for summary judgment.

### 4.    *Claims by Graciela and Kassandra Torres against Officer McMahon*

Graciela Torres and her daughter, Kassandra Torres, sued Officer McMahon, claiming that he used force against them without provocation.  The district court summarized the factual claims as follows: "Graciela Torres alleges that McMahon pushed her into a fence, causing a bruise.  Kassandra Torres, who was seven years old at the time of the events, alleges that McMahon pushed her to the ground, causing a scratch on her arm."  District Court Opinion at 78.  Officer McMahon sought qualified immunity on these claims, but the district court denied his motion, holding:

> Even considering that the higher Fourteenth Amendment standard applies to the qualified immunity analysis for these plaintiffs, we believe that a jury could reasonably find from the evidence that McMahon's alleged conduct shocked the conscience because McMahon either intended to cause them harm or was deliberatively indifferent to the risk of causing them harm.

District Court Opinion at 79.

On appeal, Officer McMahon first claims that the district court erred in considering the affidavit Graciela filed that identified him as the officer who had pushed Graciela and Kassandra. Officer McMahon contends that that affidavit constituted a change in testimony from the answers Graciela made in her interrogatory answers.  Again, we lack jurisdiction to consider that question. *See supra* 5-6.

---

[14] Because these plaintiffs were inside the house, it would appear that they were seized along with the other individuals who were ordered to remain in the house.  However, we need not conclusively rule on this question because even under the higher Fourteenth Amendment standard, Officer Vitalo's claim of qualified immunity fails.  We also note that the parties did not explore the question of the appropriate standard and the district court ruled alternatively, holding that Officer Vitalo was not entitled to qualified immunity "[e]ven considering that the higher Fourteenth Amendment standard applies . . . ."  District Court Opinion at 72.

Alternatively, Officer McMahon argues that he is entitled to qualified immunity even accepting the facts set forth in the affidavit and relied upon by the district court. Those facts, however, are extremely limited and merely portray Officer McMahon as pushing Graciela into a fence and Kassandra to the ground for no reason. There is no evidence noted in the district court's opinion showing any justification whatsoever for Officer McMahon pushing Graciela and Kassandra. Under these circumstances, a reasonable officer would know that his conduct violated clearly established constitutional norms. *See Lewis*, 523 U.S. at 849.[15] Accordingly, at this stage, we must affirm the district court's denial of summary judgment to Officer McMahon.

> 5.      *Claims by Gonzalo Duran Jr. and Julia de la Cruz against Officer Cruz*

Gonzalo Duran Jr. and Julia de la Cruz claimed that Officer Cruz sprayed them with pepper spray in violation of their constitutional rights. Officer Cruz sought summary judgment based on qualified immunity. The district court denied that motion, concluding that "[a] jury could reasonably find on the facts that Cruz's spraying of plaintiffs was done to cause harm." District Court Opinion at 62.

On appeal, Officer Cruz first argues that the district court erred in relying on Gonzalo Duran Jr.'s affidavit, in which he claimed that Officer Cruz "sprayed mace which hit Julia de la Cruz and me in the face." Officer Cruz claims that this testimony contradicted Gonzalo Duran Jr.'s prior sworn testimony and thus should not have been considered. Again, we lack jurisdiction to consider that question on interlocutory appeal. *See supra* at 5-6.

Alternatively, Officer Cruz contends that he is entitled to qualified immunity because Gonzalo Duran Jr.'s affidavit requires this court to speculate that Gonzalo and Julia had done nothing and that Officer Cruz just walked up and sprayed them without any provocation. Unlike the affidavits of the other plaintiffs addressed above, which state that the defendants intentionally sprayed them with pepper spray, Gonzalo Duran Jr.'s affidavit is more carefully crafted, stating

---

[15] Of course, the facts may show the officers merely pushed these individuals (and other plaintiffs presenting similar claims) as necessary to assist other officers or to gain control of the situation. Such conduct, while possibly the "careless or unwise excess of zeal," would not violate the Due Process Clause. *See Cummings v. McIntire*, 271 F.3d 341, 346 (1st Cir. 2001) (internal citations omitted). But here we have no justification whatsoever presented.

that Officer Cruz "sprayed mace which hit Julia de la Cruz and me in the face." See Appellant Brief at 39 (quoting affidavits). It very well could be that Officer Cruz had a legitimate reason to discharge the pepper spray at Gonzalo Duran Jr. and Julia de la Cruz, or that he sprayed other partygoers who were resisting arrest and the spray lofted over to Gonzalo Duran Jr., and Julia de la Cruz. Under either of those circumstances, Officer Cruz would be entitled to qualified immunity. However, our review on interlocutory appeal is limited to the facts as set forth by the district court and under the district court's version of the facts, there was no stated justification for Officer Cruz spraying the pepper spray that struck Gonzalo, Duran, Jr., and Julia de la Cruz. Accordingly, at this stage, we must deny Officer Cruz qualified immunity, as it is clearly established that "conduct intended to injure in some way unjustifiable by any government interest," shock the conscience. *Lewis*, 523 U.S. at 849. Therefore, we affirm the district court's denial of summary judgment to Officer Cruz on these claims.

> 6. *Claims by Jose Manuel Uribe and Jose Manuel Uribe Jr. against Officer Cruz.*

Jose Manuel Uribe and Jose Manuel Uribe Jr. sued Officer Cruz, claiming that he sprayed them with pepper spray. Officer Cruz moved for summary judgment based on qualified immunity. The district court denied Officer Cruz's motion, concluding that "a jury could reasonably find on the facts that Cruz's spraying of plaintiffs was done to cause harm." District Court Opinion at 62. Officer Cruz responds with the same two arguments made and rejected above, namely that the district court erred in considering the affidavit Jose Manuel Uribe filed because his affidavit conflicted with his earlier interrogatory answers, and that using pepper spray on individuals does not violate clearly established constitutional norms. We again reject those arguments, the first because we lack jurisdiction, *see supra* at 12-16, and the second because it is clearly established that assaulting individuals without provocation is unconstitutional. *Lewis*, 523 U.S. at 849. Accordingly, we affirm the district court's denial of summary judgment to Officer Cruz on these claims.

> 7. *Claims by Lisbeth Moreno and Diego Torres against Officer DeCianni.*

Lisbeth Moreno and Diego Torres sued Officer DeCianni, claiming Officer DeCianni sprayed them with pepper spray. The district court summarized the allegations as follows: Lisbeth Moreno alleged that Officer DeCianni sprayed her, and Diego Torres alleged that Officer DeCianni sprayed him and told him to "move the f[–] out of the way, you little brat." District Court Opinion at 88. Officer DeCianni moved for summary judgment based on qualified immunity, and the

district court denied that motion, concluding "that a jury could reasonably find from the evidence that DeCianni's alleged conduct shocked the conscience because DeCianni either intended to cause these plaintiffs harm or was deliberately indifferent to the risk of causing them harm." District Court Opinion at 90. On appeal, Officer DeCianni incorporates the same arguments for reversal as considered and rejected above. And we too incorporate our above analysis and hold that we lack jurisdiction to consider whether the district court erred in considering later-filed affidavits and that qualified immunity based on the sparse facts undisputedly known at this time is inappropriate. *See supra* at 12-16; 70-71. Therefore, we affirm the district court's denial of summary judgment to Officer DeCianni on these claims.

### 8. *Claim by Ismael Torres against Officer Peslak.*

Ismael Torres sued Officer Peslak, claiming that Officer Peslak sprayed him with pepper spray in his eyes. Officer Peslak sought summary judgment based on qualified immunity on this claim, but the district court denied the motion, concluding that "a jury could reasonably find from the evidence that Peslak's alleged conduct shocked the conscience because Peslak either intended to cause [Ismael Torres] harm or was deliberately indifferent to the risk of causing [him] harm." District Court Opinion at 85. On appeal, Officer Peslak also duplicates the arguments made and rejected above. For the same reasons, we conclude that we lack jurisdiction to consider whether the district court improperly considered Ismael Torres' later-filed (and allegedly contradictory) affidavit. *See supra* at 12-16. And based on the facts as set forth by the district court, Officer Peslak is not entitled to qualified immunity because a reasonable officer would know that it is unconstitutional to spray someone with pepper spray, without any justification. *See supra* at 70-71. Therefore, we affirm the district court's denial of summary judgment on Ismael Torres's claim against Officer Peslak.

### 9. *Jesus Uribe's Claim against Sergeant Krummick.*

Jesus Uribe alleged that Sergeant Krummick used excessive force by pushing him inside the Duran house. Uribe also claimed that while inside the house he saw pepper spray come from underneath the door, but Uribe did not claim any injury from the pepper spray, and he does not point to any evidence that Sergeant Krummick discharged the pepper spray. Thus, Uribe's sole claim of excessive force against Sergeant Krummick is based on the officer's push.

Sergeant Krummick argued that he is entitled to qualified immunity on this claim, but the district court denied Sergeant Krummick's motion, concluding that

"it was clearly established that 'police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." District Court Opinion at 67 (quoting *Clash*, 77 F.3d at 1048). The district court further concluded that under Uribe's version of the facts, "there was no reason for Sergeant Krummick to believe that pushing Jesus Uribe into the house was justified." District Court Opinion at 67.

We disagree. Unlike the claims made by Graciela and Kassandra Torres that they were pushed into a fence or to the ground, under the facts as found to exist by the district court, Sergeant Krummick pushed Jesus Uribe *into the house*. Under the circumstances of this case, an officer could reasonably believe that pushing an individual into a house was justified by the need to disperse and control a large, unruly gathering, in which partygoers outnumbered officers. Significantly, we judge reasonableness from the officers' perspective at the time and not with twenty-twenty hindsight. In this case, as the district court set forth, Sergeant Krummick was one of the later officers to arrive on the scene, and he arrived on the scene only after back-up officers radioed the dispatcher to send a supervisor and additional officers because people were "getting unruly." District Court Opinion at 3. By the time Sergeant Krummick arrived there were approximately eighty to ninety people at the party, and there were several verbal confrontations occurring between officers and party guests. District Court Opinion at 3. Under these circumstances, it was reasonable for an officer to attempt to expeditiously corral the crowd by pushing members of the crowd into the house. Or at a minimum, given the lack of analogous case law, it was not clearly established that pushing an individual under the circumstances known at the time to Sergeant Krummick violated clearly established constitutional norms. Accordingly, Officer Krummick was entitled to summary judgment on Jesus Uribe's excessive force claim and we reverse the district court.

### 10.   *Graciela Pineda's claim against Officer Gross.*

Plaintiff Graciela Pineda sued Officer Gross claiming that she violated her constitutional rights by spraying her with pepper spray without justification. Unlike the plaintiffs inside the house, Pineda was not "seized" within the meaning of the Fourth Amendment, and thus her claim is analyzed under the "shocks the conscience" standard of the Fourteenth Amendment. *Lewis,* 523 U.S. at 846-47. Applying that standard, the district court denied Officer Gross qualified immunity, concluding that a reasonable jury could find that she had sprayed Pineda in order to cause harm.

On appeal, Officer Gross's sole contention is that Graciela Pineda "has not cited to any case that would show that spraying pepper spray in and of itself constitutes excessive force." Appellant Brief at 42. However, as this court has explained before, "[i]t would create perverse incentives indeed if a qualified immunity defense could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books. . . . The easiest cases don't even arise." *McDonald by McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992) (internal quotations omitted). Thus, defendants cannot claim qualified immunity merely because another case is not on all fours with their situation. Rather, the question is whether the law provided the defendant with fair notice that the conduct was unconstitutional. *Coady v. Steil*, 187 F.3d 727, 734 (7th Cir. 1999). *Lewis* provided just such warning, informing officers that "conduct intended to injure in some way unjustifiable by any government interest" shocks the conscience. *Lewis*, 523 U.S. at 849. While it may well be that the facts that come out later show some justification for Officer Gross's alleged spraying of Graciela Pineda, the facts as set forth by the district court do not support such a claim by Officer Gross. *See e.g. Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir. 2001) (holding that use of pepper spray was reasonable given individual's active interference with officers); *Wagner v. Bay City, Texas*, 227 F.3d 316, 324 (5th Cir. 2000) (holding that use of pepper spray was reasonable where individual was resisting arrest); *Monday v. Oullette*, 118 F.3d 1099, 1104-05 (6th Cir. 1997) (holding that use of pepper spray was reasonable where officer warned that he would discharge it if the individual did not cooperate). Accordingly, at this stage we conclude that Officer Gross was not entitled to qualified immunity and we affirm the district court's denial of summary judgment on this claim against Officer Gross.

### 11.  *Maria Alicia Moreno's claim against Officer Gross.*

Plaintiff Moreno also sued Officer Gross, arguing that Officer Gross violated her constitutional rights by indirectly spraying her with pepper spray.[16] Moreno

---

[16] The district court noted that "[i]n her answer to interrogatories, Maria Alicia Moreno identified Officers Peslak and Gross as having sprayed her with pepper spray. However, in her affidavit, Moreno identifies only Peslak as having sprayed her directly, and states that in the yard, she was not sprayed directly but merely felt the effects of pepper spray indirectly. It does not appear that when deposed, Moreno identified Gross as having sprayed her directly. Accordingly, we will consider Moreno's prior allegation that Gross sprayed her directly as having

(continued...)

further alleged that when she attempted to enter the garage, Officer Gross pulled her away, ordering Moreno to remain in the backyard.

As with Pineda's claim against Officer Gross, Moreno's claim based on the pepper spraying is analyzed under the Fourteenth Amendment's "shocks the conscience" standard. *Lewis*, 523 U.S. at 846-47. Applying that standard, the district court concluded that "a jury could reasonably find on these facts that Gross's conduct was done to cause harm." District Court Opinion at 60. We disagree. As the district court explained, Moreno's claim was that she felt the ill effects of pepper spray indirectly. Thus, there is no evidence that Officer Gross intended to cause harm to Moreno, and thus no evidence that Officer Gross' conduct violated the Fourteenth Amendment. As to the claim that Officer Gross "pulled" Moreno when she attempted to enter the garage, that conduct was justified under the facts as set forth by the district court, namely, the officers were faced with an escalating situation in which partygoers outnumbered officers. It was reasonable for an officer under these circumstances to believe it was necessary to pull someone in the crowd so as to prevent them from entering a garage, which could have tools or other items that could be used as weapons. Accordingly, Officer Gross did not violate Moreno's constitutional rights. Alternatively, Officer Gross was entitled to qualified immunity on Moreno's claims. Therefore, we reverse the district court's denial of summary judgment to defendant Officer Gross on Maria Alicia Moreno's claim.

> ### 12. Adolfo Duran's claim against Officer McMahon.

Adolfo Duran sued Officer McMahon, claiming Officer McMahon sprayed him with pepper spray. The district court noted that Officer McMahon admits that he sprayed Adolfo Duran and that the allegations were thus sufficient to create a genuine issue of fact on Adolfo's excessive force claim. Accordingly, the district court denied Officer McMahon qualified immunity.

On appeal, Officer McMahon argues that it is not even clear that he sprayed Adolfo Duran, but that if he did, he did so because Adolfo Duran was pushing him. Officer McMahon then argues that "[s]praying pepper spray at someone who is pushing him is not in and of itself a malicious act and there is no evidence McMahon intended to hurt Adolfo Duran." Appellant Brief at 43. Although we would agree that an officer is entitled to qualified immunity if the claim is that he

---

[16](...continued)
been abandoned." District Court Opinion at 59.

pepper-sprayed an individual who pushed him in the midst of the officer attempting to control a large crowd, the problem for Officer McMahon is that our review is limited on interlocutory appeal. In this case, the district court noted only that Officer McMahon admitted to spraying Adolfo Duran and did not set forth any facts indicating that Adolfo Duran pushed Officer McMahon. Given our limited review, we must affirm then the district court's denial of summary judgment based on qualified immunity because under the district court's version of the facts, Officer McMahon sprayed Adolfo Duran with pepper spray without justification. *Lewis*, 523 U.S. at 849.

## III.

As explained above, this court lacks jurisdiction to consider the defendants' challenges to the district court's reliance on later-filed affidavits. However, we have jurisdiction to consider the purely legal question of whether the facts, as set forth by the district court, are sufficient to establish a violation of clearly established constitutional norms. On the legal questions, we AFFIRM, in part, and REVERSE, in part, on the claims of qualified immunity. Specifically, we AFFIRM the district court's denial of qualified immunity to: 1) Officers DeCianni and Peslak on the claims brought by individuals alleging they were pepper- sprayed while inside the Duran house; 2) Officer DeCianni on Gonzalo's false arrest claim; 3) Officer DeCianni on Gonzalo's excessive force claim; 4) Sergeant Krummick on the claims by Amada Duran, Concepcion Duran, Jaime Duran, and Kevin Duran that he pepper-sprayed them without justification; 5) Officer DeCianni on the claims by Amada Duran, Concepcion Duran, Jaime Duran, Kevin Duran and Alondra Paredes that he pepper-sprayed them without justification; 6) Officers Cruz and DeCianni on claims by Joel Rico Duran and Jesus Rico Duran that they pepper- sprayed them without justification; 7) Officer Vitalo on claims by Raquel Uribe, Florina Pindea, and Manuel Uribe Palacios that he pepper-sprayed them without justification; 8) Officer McMahon on claims by Graciela and Kassandra Torres that he pushed them without any justification; 9) Officer Cruz on claims by Gonzalo Duran Jr. and Julia de la Cruz that he pepper-sprayed them without justification; 10) Officer Cruz on claims by Jose Manuel Uribe and Jose Manuel Uribe Jr. that he pepper-sprayed them without justification; 11) Officer DeCianni on claims by Lisbeth Moreno and Diego Torres that he pepper-sprayed them without cause; 12) Officer Peslak on Ismael Torres's claim that Officer Peslak pepper-sprayed him without justification; 13) Officer Gross on Graciela Pineda's claim that Officer Gross sprayed her with pepper spray without justification; 14) Officer McMahon on Adolfo Duran's claim that Officer McMahon pepper-sprayed him without justification. We REVERSE as to the district court's denial of qualified immunity to: 1) Sergeant Krummick and Officers Vitalo and Peslak on Gonzalo's false arrest claim; 2) Sergeant Krummick

and Officers Sirgedas, Vitalo and Peslak on Gonzalo's excessive force claim; 3) Sergeant Krummick on Jesus Uribe's claim that Sergeant Krummick pushed him without justification; 4) Officer Gross on Maria Alicia Moreno's Claim that Officer Gross indirectly sprayed her with pepper spray in violation of her constitutional rights and "pulled" her.  We REMAND for the district court to enter judgment in favor of the above designated defendants and for further proceedings consistent with this opinion.