**Henry CLASH, Plaintiff–Appellee,**

v.

**Michael BEATTY, Defendant–Appellant.**

No. 95–1917.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1995.

Decided March 12, 1996.

Jeffrey Spitzer-Resnick (argued), Rachel Spector, Madison, WI, for Plaintiff-Appellee.

Michael J. Modl, Ritchie J. Sturgeon (argued), Axley & Brynelson, Madison, WI, for Defendant-Appellant.

Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The Supreme Court held in *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), that government officials who have asserted a qualified immunity defense in a "constitutional tort" action are not entitled to an immediate appeal of a district court order denying summary judgment on that basis if the order is based on the existence of genuine issues of fact that require a trial. Conversely, in *Behrens v. Pelletier*, —— U.S. ——, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), and *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court held that a district court's order denying summary judgment based on a qualified immunity defense was an immediately appealable collateral order where the issue was whether the facts alleged showed a violation of "clearly established" law. *Behrens*, at ——, 116 S.Ct. at 838; *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816–17. Our task in the present case is to decide on which side of that divide Officer Michael Beatty's qualified immunity defense falls. If the district court's denial of Beatty's summary judgment motion indicated that the question of whether the qualified immunity defense was available required further factual development, we have no jurisdiction to entertain this appeal under *Johnson*. If, on the other hand, the appeal raises only legal issues about the possible application of qualified immunity, we have jurisdiction under *Behrens* and *Mitchell*.

**I.**

This case arose from an encounter between officers of the Madison Police Department and Henry Clash and his family. On September 1, 1993, around 8:30 p.m., the Clash family went to a Kohl's grocery store. The three children waited in the car while their parents shopped. As Mr. and Mrs. Clash were leaving the store, two women approached them, one of whom told them that she had seen a child playing with a gun in the Clashes' car and had heard the child say "if you don't get away from the car I'm going to blow your weed off your head." At approximately the same time, an unidentified person called 911 to report that a juvenile was in the Kohl's parking lot with a gun in the vicinity of a gray and maroon vehicle.

Officers Parrell and Nelson responded to the 911 call. They saw the Clashes' car, which matched the description given in the 911 call, and followed the Clash family in their unmarked police car for a few blocks. At that point, a virtual armada of Madison police officers converged on the Clash family, including Officers Papalia, Hahn, Beatty, Becker, Parrell, Nelson, and Detective Grann. In all, the Clashes were surrounded by seven police officers and detectives, driving six police vehicles.

Because the 911 report indicated that someone was armed, the police treated the stop as a "high risk" stop. Parrell and Nelson instructed Henry Clash to exit his car and to walk backwards toward Parrell. He did so. Parrell then handcuffed him and searched him for weapons (finding none). Beatty then escorted Clash to Papalia's police car. The other members of the family were similarly told to get out of the car, one at a time, and were searched and handcuffed. Mrs. Clash informed the officers that Jerome, their 12-year old son, had been "pointing a gun around and that this was a stupid thing to do." When the police searched the

Clashes' car, they found a toy cap gun that was black with an orange cylinder, had a three inch barrel, and was approximately five inches long. No other weapons, real or toy, were found.

The issue on this appeal concerns what happened to Henry Clash after Beatty escorted him to Papalia's police car. By then, it is important to remember, Clash was already handcuffed, and the officers had ascertained that he was unarmed. Notwithstanding these facts, in Clash's words, this is what happened next:

> [Beatty] opened the door and I told the officer that, that I wouldn't fit into, could I get into the car by myself. So he took his hand and shoved me in the car and my kneecap popped real loud and I hollered. And I told him, I said you hurt my leg, why did you push me. That I said I told you that I could have got in by myself. So he didn't say anything. He shut the door.

Beatty does not dispute that he shoved Clash into the car, nor does he dispute for present purposes that Clash injured his knee in the process.

The entire stop of the Clash family lasted about thirty minutes, from radio dispatch to its final resolution. No one was arrested or charged with any crime. The police officers offered to provide Mr. Clash with medical attention for his knee and wrists, but he declined. Later, however, he went to the emergency room at the University of Wisconsin Hospital and was treated for a trauma injury to his knee. That injury continues to cause him pain and discomfort.

As a result of these events, the Clashes brought suit under 42 U.S.C. § 1983 against the City of Madison, its Chief of Police, and the individual police officers who were involved. They claimed that the defendants used excessive force against them in violation of the Fourth Amendment, that the degree of force employed was influenced in violation of the Fourteenth Amendment by the fact that plaintiffs are African–American, and that the pat-down searches of Mrs. Clash and one of her daughters violated their Fourth Amendment rights to be free from unreasonable searches. The only issue before us in this appeal pertains to Mr. Clash's claim against Officer Beatty, which charged that Beatty used excessive force in violation of the Fourth Amendment when he pushed Clash into the police car. (The district court granted summary judgment on all other federal claims against the remainder of the defendants.)

Beatty moved for summary judgment on the ground that he enjoys a qualified immunity from liability, because, even if he did what Clash described, those actions would not have violated any clearly established Fourth Amendment right. After surveying the law in this area, the district court found no case "involving an allegedly excessive use of force of a police officer undertaken with at least a partially valid purpose." Nonetheless, she concluded that "[i]f the shove was wholly gratuitous, it may have constituted such an 'elementary violation' of the Fourth Amendment that plaintiff need not show a precisely analogous case," citing *Kernats v. O'Sullivan*, 35 F.3d 1171, 1181 (7th Cir.1994). Because the particular facts surrounding the shove were unclear and required further development, she denied summary judgment to Beatty on the claim of qualified immunity. Beatty appeals from that order.

## II.

Use of excessive force by police officers during an investigatory stop constitutes a Fourth Amendment violation actionable under 42 U.S.C. § 1983. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). These claims require the court to evaluate "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396, 109 S.Ct. at 1872. When a defendant officer raises the defense of qualified immunity, the plaintiff bears the burden of showing the existence of the allegedly clearly established constitutional right. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir.1993) (citing *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.), cert. denied, 488 U.S. 968,

109 S.Ct. 497, 102 L.Ed.2d 534 (1988)). The plaintiff may do so by (1) pointing to a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment. Id. at 1174.

■ Both sides agree that the district court was correct in concluding that no decided case is so closely analogous to Clash's situation that it alone rebuts Beatty's claim of qualified immunity. Beatty focuses on other cases that, he argues, show that the kind of shove he administered to Clash was something that he would have had no reason to believe amounted to "plainly excessive" force in violation of the Fourth Amendment. At oral argument, Beatty's lawyer stressed repeatedly the parties' agreement on the underlying facts: the general setting of the stop, the action of Officer Beatty in escorting Clash to the police car, and the fact that Beatty propelled Clash into the car with a push. Clash responded by pointing out that the crucial issue went beyond these bare bones facts: should Beatty have known in the circumstances presented that the shove was "plainly excessive."

■■ It is clear, as Beatty admitted, that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever. This Court's decision in *McDonald v. Haskins*, 966 F.2d 292 (7th Cir.1992), makes that much clear. It is only when the circumstances themselves leave room for the exercise of judgment on the part of the police officer that qualified immunity is appropriate. The police cannot have the specter of a § 1983 suit hanging over their heads when they are confronted with a dangerous fugitive, possible escapee, or as long as their behavior falls within objectively reasonable limits. See *Connor*, 490 U.S. at 397, 109 S.Ct. at 1872–73; *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). On the other hand, if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the dis-

trict court before a definitive ruling on the defense can be made. *Johnson*, —— U.S. at ——––——, 115 S.Ct. at 2157–58.

■ Because the district court found that the facts might indeed show that the admitted shove here was "wholly gratuitous," she was not able to determine on the basis of the undisputed facts whether or not Beatty was entitled to qualified immunity. Her ruling was a narrow one, as she emphasized in her opinion:

> Viewing the facts in the light most favorable to Henry Clash, I cannot say that defendant Beatty's alleged shove was reasonable as a matter of law in light of the minimal degree of harm Henry Clash presented at the time. Clash's claim against Beatty will survive summary judgment, but the paucity of evidence proffered by plaintiffs suggest[s] that Henry Clash may have difficulty at trial demonstrating both that the shove occurred and that it was an excessive use of force.

In terms of *Mitchell v. Forsyth*, we lack the "given facts" that either do or do not show a violation of "clearly established law." The missing facts, which will be developed at trial, concern the relationship between the shove and the harm Clash may have presented. This is precisely what the parties disputed before us even at oral argument.

■ The existence of this evidentiary dispute brings this case within the rule of *Johnson v. Jones, supra*. Key facts are unknown and disputed; the qualified immunity claim is not sufficiently separable from the merits to pass the test of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); and the reasons for permitting interlocutory review of the purely legal issues contemplated by *Mitchell* are not present. As the *Behrens* opinion put it, at ——, 116 S.Ct. at 840, this is a case where what is at issue is whether the evidence could support a finding that particular conduct occurred: a shove that was objectively unreasonable in light of the harm that Clash then presented. That determination is not truly "separable" from the plaintiff's claim. Ac-

cordingly, we dismiss this appeal for lack of jurisdiction.

APPEAL DISMISSED.