In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-4125

JAMES CHELIOS,

Plaintiff-Appellant,

v.

LINDSEY HEAVENER, Sergeant,
DAVID L. GERDES, Police Chief,
and CITY OF JOLIET, a
Municipal Corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 909—**Charles R. Norgle, Sr.,** *Judge.*

_____

ARGUED DECEMBER 4, 2007—DECIDED MARCH 21, 2008

_____

Before RIPPLE, MANION and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge.* James Chelios filed this action under 42 U.S.C. § 1983 against Lindsey Heavener, a City of Joliet police officer, David Gerdes, the police chief, and the City of Joliet (collectively, the "defendants"). He alleges that the defendants violated his Fourth and Fourteenth Amendment rights by unlawfully arresting him and using excessive force to effectuate the arrest. The complaint also includes a battery claim based on Illinois law. The district court granted the defendants' motion for

summary judgment. Mr. Chelios timely filed a notice of appeal.

For the reasons set forth in this opinion, we reverse the judgment of the district court and remand the case for further proceedings.

# I

## BACKGROUND

### A.

In the early morning hours of February 20, 2005, Sergeant Heavener was parked at a liquor store located one block west of Dimitri's Bar & Grill, a business owned by Mr. Chelios. Sergeant Heavener heard eight to ten gunshots and believed them to have come from an area east of his position. He then went to Dimitri's and ordered Mr. Chelios to shut down his business for the remainder of the evening because the Sergeant believed that the gunshots had been fired from Dimitri's parking lot. Mr. Chelios complied with Sergeant Heavener's request; he told the DJ to stop playing music, and he ordered his security personnel to usher everyone out.

After closing his business, Mr. Chelios walked outside. Many patrons had left Dimitri's but remained outside in the parking lot. Mr. Chelios encountered Sergeant Heavener and explained that no shooting could have taken place in his parking lot because he had been standing in the vestibule of his business watching a camera focused on the parking lot and had not seen any shooting. Sergeant Heavener maintained that the shooting might have occurred in the parking lot.

William Moton, a bouncer at Dimitri's, approached Mr. Chelios and told him that he should to go to another area of the parking lot to hear what a witness was telling another police officer. Mr. Chelios did so; he claims that he heard a witness telling a female police officer that the shooting had not occurred in Dimitri's parking lot.

At this point, Mr. Chelios' and Sergeant Heavener's stories diverge. According to Mr. Chelios, he asked the female officer to inform Sergeant Heavener that the shooting had not occurred in the parking lot. He and Moton then began walking toward the entrance of Dimitri's. On the way, the two men encountered Sergeant Heavener, who was leaning against the building with his arms folded and one leg resting against the building. Mr. Chelios told Sergeant Heavener that he should speak to the female officer regarding the witness' statement that the shooting had not occurred in his parking lot. According to Mr. Chelios, Sergeant Heavener told him, "Get out of my face." R.40 ¶ 19, at 12. Mr. Chelios responded in kind to the officer. Mr. Chelios claims that he and Moton then walked away from Sergeant Heavener and toward the entrance of the bar. As the two men walked away, Mr. Chelios claims that Sergeant Heavener shouted several times, "If you ever walk up on me again like that, I will lock your ass up." *Id.* ¶ 22, at 12. Sergeant Heavener followed the men.

Once they were a few feet from the entrance, Mr. Chelios asked Sergeant Heavener, "Why don't you leave me alone?" R.35 ¶ 23, at 4. In response, Sergeant Heavener said, "Did you hear me? You know what, you're under arrest." *Id.*, Ex. 2 at 83. Sergeant Heavener then put his arms around Mr. Chelios' neck, grabbed his shoulders and spun Mr. Chelios around. Two other officers had

joined Sergeant Heavener, and Mr. Chelios claims that all three of them jumped on him and threw him on the ground.

Sergeant Heavener has a different account. According to him, Mr. Chelios approached him after speaking with the female police officer and the witness. He claims that Mr. Chelios called him a liar and said that the police were fabricating the entire incident. Sergeant Heavener claims that Mr. Chelios was upset. At this point, two patrons of the bar began to fight, and Sergeant Heavener claims that he walked away from Mr. Chelios to control the crowd. About five minutes later, Sergeant Heavener claims that Mr. Chelios and Moton approached the entrance of Dimitri's and came upon him. Mr. Chelios began to yell, telling the Sergeant that the gunshots had not been fired from his property and that he should go speak to the female officer.

Sergeant Heavener claims that Mr. Chelios was agitated and had his finger pointed at the Sergeant's face. The Sergeant describes Mr. Chelios as being right up in his face. According to Sergeant Heavener, Mr. Chelios poked him in the chin with his outstretched finger. After the alleged contact, Moton intervened and pulled Mr. Chelios away. At this point, Sergeant Heavener ordered, "Get back here." R.31, Ex. A at 14. Mr. Chelios and Moton, however, continued to walk away. Sergeant Heavener then yelled, "I'm going to lock your ass up." R.40 ¶ 22, at 12. Sergeant Heavener followed the two men and claims that Moton put himself between the Sergeant and Mr. Chelios. Sergeant Heavener told Mr. Chelios that he was under arrest and ordered Moton not to interfere. Moton immediately stepped away. Mr. Chelios then attempted to open the door to Dimitri's; Sergeant Heavener

grabbed his right shoulder and informed him again that he was under arrest. Mr. Chelios dropped to his knees; Sergeant Heavener also fell to the ground. Sergeant Heavener handcuffed Mr. Chelios and transported him to the Joliet Police Department.

The State of Illinois filed a criminal complaint against Mr. Chelios in Illinois Circuit Court. The complaint charged Mr. Chelios with battery, a class A misdemeanor. Mr. Chelios was acquitted of the charge.[1] R.1 ¶¶ 23-28; R.15 ¶¶ 23-27.

**B.**

In the district court, the defendants moved for summary judgment with respect to the section 1983 counts that allege unlawful arrest and excessive force on the part of Sergeant Heavener and the assault and battery count asserted against Sergeant Heavener and the City of Joliet.[2] During a hearing on the summary judgment motion, the district court and Mr. Chelios' counsel engaged in the following colloquy:

> The Court: So here in this case it's the flipside where according to the arresting officer in a statement under oath, his deposition,

---

[1] This appeal therefore is not barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

[2] Prior to the defendants' summary judgment motion, the district court granted Police Chief Gerdes' and the City of Joliet's motion to dismiss Mr. Chelios' malicious prosecution claim as well as his claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). R.21.

that is what Chelios did. And so in terms of probable cause, given the nature of the circumstances, that is sufficient to constitute probable cause.

Counsel: Well, your Honor, I mean, that's taking only the officer's version. I mean, that would be—

The Court: Well, with probable cause, one doesn't consider the ultimate defense to the case. It's whether there was a probability of criminality in this case. And the probability of criminality is that an Illinois crime had just been committed under these circumstances.

Counsel: Your Honor, Mr. Chelios denies he ever touched Sergeant Heavener. That's a material fact. In order to have aggravated battery, to have assault, you had to have a threat of battery or you had to actually have a battery. Chelios denies he ever touched him.

The Court: No. You have to have probable cause, the probability that an assault occurred, a probability—

Counsel: Correct.

The Court: —of disorderly conduct, and the probability of a battery, which would become an aggravated battery in Illinois if it were upon a police officer.

Counsel: Your Honor, but that's only if Chelios agreed that he did what Sergeant

> Heavener says he did. But under the facts as James Chelios says they occurred, I don't see how there was any battery. I think a jury could easily find there was no battery and that there was a false arrest.
>
> The Court:   That there was no probable cause for arrest?
>
> Counsel:   To believe that there was a battery, correct, Your Honor.
>
> The Court:   No probability of criminality under these circumstances?
>
> Counsel:   Under James Chelios' version of what occurred, yes, Your Honor.

R.72 at 6-7.

The district court granted the defendants' summary judgment motion in all respects. In its opinion, the court explained that it was taking the "undisputed facts from the parties' Local Rule 56.1 Statements and [that it had] note[d] disputed facts within the text." R.60 at 1 n.1.[3] In setting forth the facts, the court stated:

> According to Heavener, Chelios walked around the corner of the building and began to yell at Heavener. Chelios pointed his finger in Heavener's face, and eventually poked him in the chin. Heavener describes Chelios as being "right up in my face." As soon as Chelios poked Heavener, William Molton [sic] . . . interceded and pulled Chelios away.

---

[3] The district court's opinion also is available at *Chelios v. Heavener*, No. 06 C 909, 2006 WL 3147717 (N.D. Ill. Oct. 31, 2006).

*Id.* at 3. The opinion does not note that the parties dispute whether Mr. Chelios poked Sergeant Heavener in the chin. Nor did the court grant Sergeant Heavener's request, in his response to Mr. Chelios' statement of facts, that this fact be stricken from the record for failure to comply with the local rules.

On Mr. Chelios' unlawful arrest claim, the court determined that Sergeant Heavener had probable cause to arrest Mr. Chelios because of the alleged contact. The court explained that this conduct constituted an aggravated battery under Illinois law. It further determined that Sergeant Heavener had probable cause to arrest Mr. Chelios for resisting arrest. In the court's view, Mr. Chelios "attempted to resist arrest when he grabbed hold of the front door to Dimitri's, and tried to inhibit Heavener from taking him into custody. It took three officers, including Heavener, to finally subdue and handcuff Chelios." *Id.* at 18.

The district court also granted the defendants' summary judgment on Mr. Chelios' excessive force claim. It believed that Sergeant Heavener and the two other officers acted reasonably when they arrested Mr. Chelios. The court found no evidence to suggest that the amount of force that the officers used was excessive. The court noted that Mr. Chelios had poked Sergeant Heavener in the chin, that he had yelled at the Sergeant at close range, that Mr. Chelios was accompanied by Moton, that Sergeant Heavener had responded to a report of gunshots fired near Dimitri's and that there was a fight between two individuals occurring at the same time. The court believed that, "[g]iven these circumstances, along with the fact that Chelios had acted hostile and combative to Heavener, the proper amount of force was used

to control the situation." *Id.* at 20.[4]

## II

## DISCUSSION

This court reviews de novo a grant of summary judgment. *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Credit Ins. Co.*, 51 F.3d 1336, 1341 (7th Cir. 1995). All facts and reasonable inferences must be construed in favor of the nonmoving party, here, Mr. Chelios. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). We do not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; rather, we determine whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Magin*, 420 F.3d at 686 (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323. To overcome a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine

---

[4] The court explained that it was unnecessary to engage in an analysis of qualified immunity because it determined that Sergeant Heavener had acted reasonably.

issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Anderson*, 477 U.S. at 251-52. The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

### A.  Unlawful Arrest Claim

Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers. *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007) (per curiam); *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997). A police officer has probable cause to arrest "if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Wagner*, 493 F.3d at 836 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (alteration in original)); *see also Beck v. Ohio*, 379 U.S. 89, 90 (1964); *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993). In determining whether an officer had probable cause, the court steps into the shoes of a reasonable person in the position of the officer. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (noting that we "evaluate[] probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer' " (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 2000))). The probable cause determination must be made by a jury "if there is room for a difference of opinion concerning the facts or the

reasonable inferences to be drawn from them." *Maxwell*, 998 F.2d at 434 (explaining that, "[i]f the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists").

**1.**

Whether Mr. Chelios poked Sergeant Heavener in the chin is a critical fact to the section 1983 wrongful arrest claim. If Mr. Chelios made contact with Sergeant Heavener, then Sergeant Heavener had probable cause to arrest him for having committed an aggravated battery under Illinois law. *See* 720 Ill. Comp. Stat. 5/12-3 (defining battery as the intentional or knowing "physical contact of an insulting or provoking nature" without legal justification), 5/12-4(b)(18) (elevating to aggravated status a battery committed against a police officer). If Mr. Chelios did not make contact with Sergeant Heavener, however, Sergeant Heavener could not have had probable cause to arrest Mr. Chelios for aggravated battery.

Mr. Chelios emphasizes that the parties dispute whether he ever made any contact with Sergeant Heavener. Mr. Chelios points to his statement of additional facts filed under Northern District of Illinois Local Rule 56.1, which states: "Before his arrest, C[helios] never physically touched Heavener." R.35 ¶ 26, at 4 (citing Ex. 1 at 87, 122, 124, 141, 167; Ex. 2 at 39-40, 78, 96).[5] These citations refer

---

[5] In their memorandum filed in response to Mr. Chelios' statement of facts, the defendants stated: "The material fact asserted is not supported by [e]xhibit 1, pages 87, 122, 124, 141

(continued...)

to transcripts of testimony given at Mr. Chelios' criminal
trial for battery, which indicate that at no point did
Mr. Chelios make contact—with his outstretched finger
or otherwise—with Sergeant Heavener. For example,
Mr. Chelios testified:

> Q. Did you at any time from the time you saw Ser-
> geant Heavener up here, and even after until you
> got to the door, did you make any contact with
> Sergeant Heavener?
>
> A. Not at all, sir.
>
> Q. Did you ever touch him with your finger on the
> chin?
>
> A. Not at all.

R.35, Ex. 2 at 78. Another witness at the criminal trial also
testified[6]:

> Q. When he's—from the time that he did that, from
> the time that he got to the point where he was
> arrested, did you ever see Mr. Chelios make any
> contact with Officer Heavener—

---

[5] (...continued)
or 167. In further response, the defendants' [sic] deny the
material fact . . . ." R.40 ¶ 26, at 13. The defendants are cor-
rect that these particular pages of exhibit 1 do not support the
fact. These pages set forth Sergeant Heavener's testimony, and
it seems that Mr. Chelios' attorney included them in order to
show the contrast between Sergeant Heavener's testimony
and Mr. Chelios' testimony. The other cited pages (exhibit 2,
pages 39-40, 78, 96) *do* support the fact.

[6] Presumably, this testimony was given by Moton, the bouncer
who worked for Mr. Chelios. The transcript, however, does
not identify the name of the witness.

A. No sir.

Q. —of a physical nature?

A. No, sir.

Q. Did he ever touch his chin?

A. No, sir, I was—

Q. Did he ever wave his finger and strike him in the chin?

A   No, sir. I was with him all the time. . . .

Q. Did you ever see Jim touch Officer Heavener on—or tap him on the chin?

A. No, sir, not at all.

*Id.* at 39-40.

In response, the defendants submit that the statement of facts that Mr. Chelios filed with the district court was defective in its entirety and therefore that the court had only one set of facts before it in ruling on the summary judgment motion. In support of this contention, the defendants claim that certain numbered facts are not supported by supporting materials and that other numbered facts are not concise statements.

Federal Rule of Civil Procedure 83(a)(1) authorizes each district court to make rules governing its practice. These local rules streamline litigation and save litigants, lawyers and courts time and effort. Given the often daunting nature of motions for summary judgment, we have "emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules." *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004)

(internal quotation marks and citation omitted); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (holding that "a failure to respond by the nonmovant as mandated by the local rules results in an admission").

As we have already mentioned, the district court stated that Mr. Chelios poked Sergeant Heavener in the chin but did *not* note that the parties dispute this fact. The court did *not* strike for noncompliance Mr. Chelios' Local Rule 56.1 statement of facts in its entirety; nor did the court strike any of Mr. Chelios' responses to the defendants' statement of facts or any particular additional fact. Nothing in the court's opinion or in the transcript of the summary judgment hearing indicates that the court was dissatisfied with Mr. Chelios' submissions under the local rules. Indeed, the court explained that it was taking the disputed facts from the "parties' Local Rule 56.1 Statements" and that it would note disputed facts within the text. R.60 at 1 n.1. Despite discussing the differences between Mr. Chelios' and Sergeant Heavener's account of the facts relating to the excessive force claim, the court did not acknowledge that Mr. Chelios maintained that he never made physical contact with Sergeant Heavener. We therefore cannot accept the defendants' contention that the district court implicitly rejected Mr. Chelios' entire statement of facts. District courts have the discretion to require strict compliance with the local rules, but we shall not presume that a party's entire statement of facts was stricken when there is no ruling to that effect. *Cf. Cichon v. Exelon Generation Co.*, 401 F.3d 803, 808-10 (7th Cir. 2005) (upholding a district court's decision to strike a party's statement of facts where the district court made an explicit ruling).

Because there is a dispute as to whether Mr. Chelios ever made physical contact with Sergeant Heavener, the

district court erred in ruling, as a matter of law, that Sergeant Heavener had probable cause to arrest Mr. Chelios for aggravated battery under Illinois law. Such a ruling could be supported only if the facts and all reasonable inferences were construed *against* Mr. Chelios, a methodology that contravenes well-established summary judgment standards. *See Magin*, 420 F.3d at 686 (requiring that the facts and all reasonable inferences must be construed in favor of the nonmoving party); *see also Anderson*, 477 U.S. at 249-50 (explaining that a court may not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.").

**2.**

The district court also determined that Sergeant Heavener had probable cause to arrest Mr. Chelios for resisting arrest when he reached to open the front door of his business and thereby tried to inhibit Sergeant Heavener from taking him into custody. Under Illinois law, a person is not authorized to resist an arrest even if the arrest is unlawful. *See* 720 Ill. Comp. Stat. 5/7-7. Under Mr. Chelios' version of the facts, however, he in no way resisted Sergeant Heavener after the Sergeant grabbed and tackled him with the assistance of two other officers. He maintains that Sergeant Heavener never told him to "get back here" or ordered him not to go inside his business; nor had Sergeant Heavener asked Mr. Chelios for assistance in connection with the investigation of the shooting.

According to Mr. Chelios, Sergeant Heavener followed him and Moton after they had their second encounter. Once they were a few feet from the business entrance, Mr. Chelios asked Sergeant Heavener, "Why don't you leave me alone?" R.35 ¶ 23, at 4. In response, Sergeant Heavener said, "Did you hear me? You know what, you're under arrest." *Id.*, Ex. 2 at 83. Sergeant Heavener then put his arms around Mr. Chelios' neck, grabbed his shoulders and spun Mr. Chelios around. Two other officers joined Sergeant Heavener, and Mr. Chelios claims that all three of them jumped on him and threw him on the ground. Mr. Chelios, as he portrays the facts, was arrested unlawfully when Sergeant Heavener grabbed him,[7] told him that he was under arrest and tackled him to the ground. He therefore had no opportunity to resist the arrest.[8]

## B. Excessive Force Claim

The force used to effect an arrest must be objectively "reasonable" under the Fourth Amendment. *Abdullahi v.*

---

[7] For purposes of the Fourth Amendment, "a person is 'seized' . . . when, by means of physical force . . . his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

[8] We further note that, under Mr. Chelios' version of the facts, Sergeant Heavener did not have probable cause to arrest Mr. Chelios for resisting or obstructing a peace officer. *See* 720 Ill. Comp. Stat. 5/31-1(a); *see also Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003) (explaining that, under Illinois law, the resistance or obstruction "must be physical; mere argument will not suffice").

*City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). To determine whether the force used to effect an arrest was reasonable the courts must engage in a "careful balanc[ing] of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1004-05 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). The reasonableness standard also recognizes that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). In sum, an officer's "use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Payne*, 337 F.3d at 778 (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)).

In deciding this issue, the district court did not view the facts in the light most favorable to Mr. Chelios. When viewed in that light, a jury reasonably could find that the force that Sergeant Heavener and the two other officers used in arresting Mr. Chelios was unreasonable. According to Mr. Chelios, Sergeant Heavener never told him that he was under arrest and never ordered him not to go inside the bar. Instead, after Mr. Chelios said, "Why don't you

leave me alone," R.35 ¶ 23, at 4, Sergeant Heavener said, "Did you hear me? You know what, you're under arrest," *id.*, Ex. 2 at 83. Sergeant Heavener immediately put his arms around Mr. Chelios' neck, grabbed his shoulders, spun Mr. Chelios around and then two other officers and Sergeant Heavener tackled Mr. Chelios. Under this version of the facts, Mr. Chelios had not committed any crime, had not presented any sort of threat to Sergeant Heavener or any third parties and had not attempted to flee or evade arrest.

In *Morfin*, there was a dispute as to whether the plaintiff had been interfering with the police's investigation of voter machine tampering on election day. According to the plaintiff's version of the facts, he had been "grabbed" by two police officers who "twisted his arms, shoved him against the wall and took him to the floor." *Morfin*, 349 F.3d at 993. Until that point, the plaintiff "had not resisted any police action and informed the officers, 'I'm going peacefully, you don't have to put handcuffs on me.'" *Id.* After he said that, the plaintiff "crossed his arms on his chest to prevent the officers from handcuffing him." *Id.* The district court held that the officer's use of force was reasonable and granted summary judgment in favor of the officers. We reversed. We held that,

> viewing the record in the light most favorable to [the plaintiff], a jury could reach the opposite conclusion. According to [the plaintiff and another witness], [the plaintiff] did not pose a threat to the officers—he was docile and cooperative. Furthermore, [the plaintiff] did not resist arrest in any way prior to the officers' use of excessive force. [The plaintiff] testified that [two officers] grabbed him, twisted his arm, shoved him toward the wall and took him to the floor. To this

point, [the plaintiff] had not resisted any police action . . . . It was only after the officers took [the plaintiff] to the floor that [he] crossed his arms on his chest to prevent the officers from handcuffing him. If a jury were to credit [the plaintiff's] version of events over that of the arresting officers, it could conclude that there was no reason for the officers to exert such force on [him].

*Id.* at 1005.

Under Mr. Chelios' version of the facts, he neither had committed a crime nor had threatened Sergeant Heavener or his fellow officers. Although we might not use the terms "docile and cooperative" to describe Mr. Chelios, even under his version of the facts (he told Sergeant Heavener to leave him alone), a jury certainly could find that his conduct in no way warranted being tackled by three officers.

The district court emphasized the chaotic nature of the circumstances that night as well as Mr. Chelios' failure to proffer any evidence showing that he had suffered injury as a result of the arrest.[9] Respectfully, we believe that this analysis is flawed. Both parties' versions of the facts undercut the district court's description of the scene as

---

[9] The court stated:

> Heavener was responding to a report of shots fired at or around Dimitri's bar, and there was another fight between two females occurring at the same time. Given these circumstances, along with the fact that Chelios had acted hostile and combative to Heavener, the proper amount of force was used to control the situation.

R.60 at 9.

being chaotic at the time that Mr. Chelios was arrested. When Mr. Chelios encountered Sergeant Heavener in the confrontation that led to the arrest, the parties agree that Sergeant Heavener was leaning against the building with his arms folded and one leg resting against the building. The inference from this fact—an inference to which Mr. Chelios is entitled given the posture of this case—is that, by the time that Mr. Chelios was arrested, the situation had calmed down substantially. Moreover, the scene's chaotic nature has little bearing on the threat that Mr. Chelios posed to Sergeant Heavener or other officers. None of the officers suspected that Mr. Chelios had perpetrated the shooting, that he had been connected in any way to the shooting or that he was armed. Indeed, Mr. Chelios had cooperated with the police; he closed down his business and ordered his patrons out of the bar. Mr. Chelios' failure to proffer evidence showing the severity of his injuries also does not warrant summary dismissal. Although injury is a relevant factor in deter-mining whether an officer used excessive force, an exces-sive force claim does not require any particular degree of injury. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007) ("That [a plaintiff's] injuries may have been minor does not militate against a finding of excessive force."); *McNair v. Coffey*, 279 F.3d 463, 468 (7th Cir. 2002) (Cudahy, J., concurring) ("Physical injury is not a necessary element of a claim for excessive force."); *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 471 n.3 (7th Cir. 1997); *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995); *Meyer v. Robinson*, 992 F.2d 734, 738 (7th Cir. 1993); *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988); *Lester*, 830 F.2d at 713-14. Accordingly, taking the facts in the light most favorable to Mr. Chelios, a jury could find that

Officer Heavener used excessive force when he and two other officers tackled Mr. Chelios.

## C.  Qualified Immunity

The doctrine of qualified immunity shields from liability public officials who perform discretionary duties. *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007). Qualified immunity shields from liability police officers "who act in ways they reasonably believe to be lawful." *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). The defense provides "ample room for mistaken judgments" and protects all but the "plainly incompetent and those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (noting, in the excessive force context, that the "police cannot have the specter of a § 1983 suit hanging over their heads when they are confronted with a dangerous fugitive, possible escapee, or as long as their behavior falls within reasonable limits"). Qualified immunity thus protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual. *Anderson*, 483 U.S. at 643; *Belcher*, 497 F.3d at 749.

The Supreme Court of the United States has articulated a two-part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; (2) whether that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A plaintiff may discharge the burden of showing that the constitutional right was clearly established by showing that there is "a clearly

analogous case establishing a right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001); *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999).

**1.**

When the facts of this case are taken in the light most favorable to him, Mr. Chelios has shown that Sergeant Heavener violated his constitutional rights by arresting him without probable cause. Moreover, given that, under his version of the facts, Mr. Chelios had not made physical contact with Sergeant Heavener, conducted himself in a disorderly manner or otherwise obstructed or impeded Sergeant Heavener in his duties, we believe that case law would have put him on notice that Mr. Chelios had a right to be free from arrest under the particular circumstances of this case. *See, e.g., Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (explaining that an officer did not have probable cause to arrest where the individual "did not raise his voice, use profanity, make unreasonable noise, or otherwise engage in any behaviors prohibited by the disorderly conduct statute"); *Payne*, 337 F.3d at 775-78 (holding that similar facts did not create probable cause to arrest for resisting or obstructing a police officer); *Morfin*, 349 F.3d at 997-1000 (same).

**2.**

With regard to his excessive force claim, Mr. Chelios similarly may defeat Sergeant Heavener's qualified immunity defense by

> (1) pointing to a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.

*Clash*, 77 F.3d at 1048. Our prior cases indicate that "[i]t is clear . . . that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Id.* Although there are not many cases that are closely analogous to this one, *see, e.g.,* *Morfin*, 349 F.3d at 993 (denying summary judgment where two officers tackled a passive, non-resisting individual), Mr. Chelios, nonetheless, may show that the force that Sergeant Heavener used in effectuating the arrest was so plainly excessive that a reasonable police officer would have been on notice that such force is violative of the Fourth Amendment.

Establishing that the use of force in a particular case was "so plainly excessive" requires a fair amount of factual development. Thus, "if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made." *Clash*, 77 F.3d at 1048. In *Clash*, some passers-by had called the police because they had seen several youngsters in a parked automobile playing with a gun. *Id.* at 1046. One of the passers-by reported that

he had heard the child say, "if you don't get away from the car I'm going to blow your weed off your head." *Id.* The police arrived on the scene and arrested the plaintiff as he was coming back to his car from inside a store. *Id.* at 1047. The officer handcuffed the plaintiff and then discovered that the gun with which the children in his car had been playing was a toy. *Id.* Despite this discovery, the plaintiff alleged that the officer escorted him to a police car and told him to get in. *Id.* The plaintiff told the officer that he would not fit inside the car, and the officer responded by shoving him into the car, making the plaintiff's knee pop loudly. *Id.* We affirmed the district court's denial of qualified immunity because the "missing facts, which will be developed at trial, concern the relationship between the shove and the harm Clash may have presented." *Id.* at 1048. In light of the factual disputes between the parties, we explained, a trial was required before determining whether the officer should "have known in the circumstances presented that the shove was 'plainly excessive.' " *Id.*

This case similarly is susceptible to additional factual development on both sides before a conclusion can be reached as to whether Sergeant Heavener's use of force was plainly excessive. Sergeant Heavener and Mr. Chelios are disputing most of the facts that bear on the objective reasonableness of the officers' use of force. The parties dispute whether and to what degree Mr. Chelios had become agitated and threatening in speaking to Sergeant Heavener, how chaotic the scene was at the time of Mr. Chelios' arrest, what was the exact sequence of events leading up to the arrest and whether Mr. Chelios had made any physical contact with Sergeant Heavener. These factual disputes bear on the objective reasonable-

ness of the force used to arrest Mr. Chelios, and therefore a trial is required before a determination can be made as to whether Sergeant Heavener is entitled to qualified immunity.

### D.  Illinois State Law Battery Claim

Lastly, Mr. Chelios contends that the district court equated the Fourth Amendment excessive force claim with the Illinois state law battery claim and therefore erroneously dismissed the battery claim without any further analysis.

Under Illinois law, battery is the "unauthorized touching" of another that "offends a reasonable sense of personal dignity." *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. 1995) (internal quotation marks and citation omitted). The record contains facts that, if accepted by a jury, would meet this definition. Mr. Chelios, however, must clear another hurdle: The Illinois Tort Immunity Act shields public employees from liability for actions committed "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202; *see also id.* 10/1-202 (defining "employee" as a "present or former officer"). The Illinois courts have held that a police officer is not guilty of willful or wanton conduct unless he acted with "actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Breck v. Cortez*, 490 N.E.2d 88, 94 (Ill. App. 1986); *see also Carter v. Chi. Police Officers*, 165 F.3d 1071, 1080-81 (7th Cir. 1998). Although willful and wanton conduct "consists of more than mere inadvertence, incompetence, or unskillfulness," it need not be an "intentional act;

rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Carter*, 165 F.3d at 1071. Whether an officer acted in such fashion "is normally a question of fact to be determined by the jury." *Stamat v. Merry*, 397 N.E.2d 141, 145 (Ill. App. 1979).

In response to the defendants' motion for summary judgment, Mr. Chelios submitted a transcript of Sergeant Heavener's testimony from a hearing held before the Joliet, Illinois Liquor Commission. At this hearing, Sergeant Heavener testified:

> And, yes, when he put his finger—I was actually pretty calm until he put his finger in my face and made contact with me. At that point, you know, I've got to take action or my credibility as a police officer is shot. I respond [to Dimitri's Bar] every weekend. If these people see the owner treating the police like that, that's going to make them think that they can treat the police like that, and I'm going to lose my credibility with those people, okay.

R.35, Ex. 1 at 123-24. From Sergeant Heavener's testimony, a jury might well conclude that his arrest and tackling of Mr. Chelios was an intentional and calculated display of force. This inference, combined with its acceptance of Mr. Chelios' version of the events that night, might lead a jury to find, reasonably, that Sergeant Heavener acted with "actual or deliberate intention to harm." This factual question certainly is a close one. Nevertheless, we must conclude that, under Mr. Chelios' version of the facts, he is entitled to have a jury determine whether the Sergeant engaged in actions for which he can be held liable under Illinois law. Accordingly, we believe that Mr. Chelios should be allowed to proceed with the state law battery claim.

It bears emphasis that, at this stage of the litigation, we must take the facts in the light most favorable to Mr. Chelios and must resolve all evidentiary conflicts in his favor. Although a factfinder ultimately may credit Sergeant Heavener's version of the events, we must decide the case on the record before us.

### Conclusion

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. On remand, Circuit Rule 36 shall apply.

REVERSED and REMANDED